IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAR-FRESHNER CORPORATION,<br><br>and<br><br>JULIUS SÄMANN LTD.,<br><br>                          Plaintiffs,<br><br>          v.<br><br>AMERICAN COVERS, LLC F/K/A AMERICAN COVERS, INC. D/B/A HANDSTANDS, ENERGIZER HOLDINGS, INC., and ENERGIZER BRANDS, LLC,<br><br>                          Defendants. | Civil Action No.:  5:17-cv-171 (TJM/ATB) |

**COMPLAINT AND JURY DEMAND**

Plaintiffs CAR-FRESHNER Corporation ("CFC") and Julius Sämann Ltd. ("JSL") (collectively, "Plaintiffs"), by and through their undersigned attorneys, for their complaint against Defendants American Covers, LLC f/k/a American Covers, Inc. d/b/a HandStands, Energizer Holdings, Inc., and Energizer Brands, LLC ( collectively "Defendants" or "Handstands"), allege as follows:

NATURE OF THE ACTION

1. Plaintiffs bring this action for trademark infringement, false designations of origin, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and corresponding state law.

2. For more than sixty years, Plaintiffs have marketed their world famous air fresheners with distinctive and recognizable trademarks, including, for example, the use of an

abstract tree design in connection with their air fresheners.  Since 2004, Plaintiffs consistently and continuously have used the trademark BLACK ICE in conjunction with their renowned air fresheners and related products, which are marketed to consumers who prefer masculine scents.

3. HandStands is a direct competitor of Plaintiffs.  Instead of investing in its own product development and marketing strategies, over the past seven years HandStands has regularly misappropriated Plaintiffs' intellectual property and innovations, resulting in several prior disputes, one recent litigation and two settlement agreements between 2010 and 2013.

4. Consistent with HandStands' prior unlawful behavior, HandStands once again has unlawfully misappropriated Plaintiffs' valuable intellectual property and competed unfairly by manufacturing, marketing and selling air fresheners and related products that feature marks containing or comprising of "Black Ice" on the products themselves and/or the promotional materials associated therewith and marketing those unlawful products in a fashion closely similar to how Plaintiffs market their renowned BLACK ICE products.

5. There is no excuse for HandStands' unfair competition and willful infringement of Plaintiffs' trademarks.  Plaintiffs bring this action to protect their valuable intellectual property from irreparable harm and consumer confusion that erodes and damages the reputation and goodwill Plaintiffs have spent more than six decades developing.

**PARTIES**

6. Plaintiff CFC is a Delaware corporation that has its principal place of business at 21205 Little Tree Drive, Watertown, New York 13601-0719.

7. Plaintiff JSL is a Bermuda corporation that has a place of business at Victoria Place, 31 Victoria Street, Hamilton HM10, Bermuda.

8.     On information and belief, Defendant American Covers, LLC f/k/a American Covers, Inc. d/b/a HandStands ("American Covers") is a Utah corporation that has its principal place of business at 533 Maryville University Dr., St Louis, Mo 63141.

9.     On information and belief, Defendant Energizer Holdings, Inc. ("Energizer Holdings") is a Missouri corporation that has its principal place of business at 533 Maryville University Dr., St Louis, Mo 63141.

10.    On information and belief, Defendant Energizer Brands, LLC ("Energizer Brands") is a Delaware corporation that has its principal place of business at 533 Maryville University Dr., St Louis, Mo 63141.

11.    Upon information and belief, American Covers and Energizer Brands are wholly-owned subsidiaries of Energizer Holdings, all of whom are actively participating in the infringing conduct claimed below.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338.  This court has supplemental jurisdiction over the claims arising under the laws of New York pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## PLAINTIFFS' BUSINESS AND TRADEMARKS

14.    For over 60 years, directly and/or by license from JSL and its predecessors, CFC and its predecessors have used trademarks and corporate identifiers comprising or containing a distinctive abstract tree design (the "Tree Design Marks") and/or comprising or containing the mark CAR-FRESHNER (the "CAR-FRESHNER Marks") on and in connection with the manufacture, marketing and sale of various products and services, including without limitation the world

famous air fresheners sold under the LITTLE TREES brand ("LITTLE TREES Air Fresheners"), as shown by the examples below:



15. In addition to the distinctive trademarks described above, since at least as early as 2004, CFC, through license from JSL, has also used trademarks containing or comprising BLACK ICE (the "BLACK ICE Marks") on and in connection with the manufacture, marketing and sale of various air fresheners.



16. Products bearing the BLACK ICE Marks are among Plaintiffs best-selling items, and have become widely known to consumers, who associate those marks exclusively with Plaintiffs and Plaintiffs' high quality products. On information and believe, BLACK ICE is also the best-selling automotive air freshener fragrance in the United States.

17. Plaintiffs' products sold in conjunction with the BLACK ICE Marks are marketed, *inter alia*, as having a "masculine fragrance with a fusion of sandalwood, bergamot, and lemon with an air of mystery," including on Plaintiffs' website located at www.littletrees.com.

18. JSL is the owner of the BLACK ICE Marks, and CFC is the exclusive licensee of such marks for air fresheners and related products in the United States.

19. Plaintiffs use the BLACK ICE Marks in a variety of ways to identify Plaintiffs as the source of high quality air fresheners and related products. Among many other uses, the BLACK ICE Marks appear on the packaging for Plaintiffs' products, in various forms of advertising and promotions for Plaintiffs and their products and throughout websites operated by Plaintiffs.

20. Products bearing the BLACK ICE Marks have become staples of American commerce, familiar to millions of consumers who encounter these products and marks in a wide variety of commercial contexts. Consumers know and recognize such marks as designating products and services of the highest and most reliable quality.

21. Many of Plaintiffs' products bearing the BLACK ICE Marks are marketed for use and are used by consumers, without limitation, in automobiles.

22. Plaintiffs' products bearing and sold in connection with the BLACK ICE Marks are marketed and sold widely throughout the United States and in most countries throughout the world, and they appear frequently on television, in movies, and in popular culture as a symbol of high-quality goods originating with Plaintiffs.

23. Plaintiffs' products bearing the BLACK ICE Marks are also widely promoted in a variety of media, including on web sites, magazines and printed promotional materials.

24. As a result of this widespread and longstanding use and promotion of the BLACK ICE Marks, and the products they designate, Plaintiffs' products sold in connection with such marks have been a phenomenal commercial success.

25. As a result of this long and extensive promotion and use in association with high-quality products, the BLACK ICE Marks have acquired tremendous goodwill and secondary meaning among the consuming public, which recognizes such marks as exclusively associated with Plaintiffs.

26. The BLACK ICE Marks are well-known and/or famous among the general consuming public and have enjoyed such renown and/or fame long prior to HandStands' infringing and diluting acts complained of herein.

27. The BLACK ICE Marks are non-functional and serve as arbitrary source identifiers of the Plaintiffs and their highly regarded products.

28. JSL owns the following federal trademark registrations for the BLACK ICE Marks:

| Mark | Registration No. | Registration Date | Goods/Services |
| --- | --- | --- | --- |
| BLACK ICE | 3,126,834 | August 8, 2006 | Air fresheners, in Class 5 |
| BLACK ICE | 4,221,968 | October 9, 2012 | Scented sprays for air, rooms, motor vehicles and the like, in Class 3 |

29. Registration No. 3,126,834 is incontestable pursuant to 15 U.S.C. § 1065.

30. Pursuant to 15 U.S.C. § 1115(a), JSL's registrations the BLACK ICE Marks are *prima facie* evidence of the validity of the such marks, JSL's ownership of the such marks, and JSL's exclusive right to use such marks in connection with the goods identified in such registrations. Pursuant to § 1115(b), Plaintiffs' incontestable registration noted above is conclusive evidence of the validity of the mark and its corresponding registration, of JSL's ownership of that mark, and of Plaintiffs' exclusive right to use that mark in commerce.

31. JSL also has strong common law trademark rights in the BLACK ICE Marks by virtue of their longstanding and well-recognized use in commerce in connection with various goods and services.

32. The BLACK ICE Marks are famous, inherently distinctive, have acquired distinctiveness and secondary meaning, represent valuable goodwill, have gained a reputation for quality belonging exclusively to JSL, and are widely recognized by the general consuming public of the United States as designations of source for Plaintiffs' products.

### DEFENDANTS' HISTORY OF PRIOR UNLAWFUL ACTIVITIES

33. On information and belief, HandStands manufactures, markets, promotes, advertises, distributes and sells air fresheners and related goods under several names, including "Refresh Your Car!," "California Scents," "Driven," and "Bahama & Co.".

34. HandStands' goods directly compete in the marketplace with Plaintiffs' goods both within the trade and among consumers.

35. Over at least the past seven years, HandStands has engaged in a consistent pattern of competing unfairly in the marketplace by replicating aspects of Plaintiffs' high-quality products and intellectual property instead of investing in its own product development and marketing and branding strategies.

36. In or about 2010, HandStands used the term "Car Fresheners" in conjunction with its air freshener and related products, including on its website. This term is nearly identical to Plaintiffs' CAR-FRESHENER Marks and corporate identifier. In or about August 2010, HandStands ceased use of the term "Car Fresheners" at Plaintiffs' request.

37. Just the following year, in conjunction with promotional materials for the insurance company Geico, HandStands manufactured, marketed and sold air fresheners nearly

identical and confusingly similar to Plaintiffs' LITTLE TREES Air Fresheners manufactured, marketed and sold in conjunction with Plaintiffs' Tree Design Marks, as shown below:

 

38. HandStands' "Geico" air fresheners not only copied nearly identically the shape and configuration of Plaintiffs' LITTLE TREES Air Fresheners and Tree Design Marks, but also replicated other trade dress and source identifying aspects associated with Plaintiffs' LITTLE TREES Air Fresheners and Tree Design Marks.

39. After Plaintiffs sent HandStands a cease-and-desist letter, Plaintiffs and HandStands entered into a settlement agreement dated December 2, 2011 (the "2011 Settlement"), wherein HandStands, *inter alia*, "recognize[d] JSL's and CFC's rights in [Plaintiffs' Tree Design Marks and trade dress] and agree[d] never to challenge these rights" and "agree[d] to desist from the use of [Plaintiffs' Tree Design Marks and trade dress] or confusingly similar facsimiles of [Plaintiffs' Tree Design Marks and trade dress] in the future for use in connection with air fresheners."

40. Within months of entering into the 2011 Settlement, in or about 2012, HandStands once again began infringing on Plaintiffs' intellectual property right by

manufacturing, marketing and selling paper air fresheners in conjunction with the slogan "Let It Hang." For nearly a decade prior, Plaintiffs had used the mark LET IT HANG in connection with the marketing and sale of their own air fresheners and other products.

41. As a result, on or about December 20, 2012, Plaintiffs filed Case No. 7:12-cv-01871-GLS-DEP in this District against HandStands, alleging, *inter alia*, infringement of Plaintiffs' LET IT HANG mark and unfair competition.

42. On or about June 4, 2013, Plaintiffs and HandStands settled (the "2013 Settlement"), wherein HandStands again recognized, *inter alia*, "JSL's and CFC's rights in [Plaintiffs' intellectual property related to the Tree Design Marks and CAR-FRESHNER Marks] and agree[d] never to challenge these rights"

43. However, later in 2013, HandStands again used the term "Car Fresheners" in conjunction with its air freshener and related products, including on its website. HandStands again ceased use of the term "Car Fresheners" at Plaintiffs' request.

44. These prior actions demonstrate that HandStands has engaged in a consistent pattern of intentionally pirating the enormous goodwill established in Plaintiffs' quality products.

45. Based on these prior disputes and settlement agreements between Plaintiffs and HandStands, it necessarily had knowledge of and specifically agreed to recognize and not challenge, violate or interfere with Plaintiffs' intellectual property rights.

46. In or about October of 2012, Handstands Chief Executive Officer notified Plaintiffs regarding a third party's infringement of Plaintiffs' BLACK ICE Marks, demonstrating Handstands' awareness of the existence of Plaintiffs' right to that Mark.

47.     Despite these prior agreements and HandStands' agreement not to violate Plaintiffs' trademark rights, HandStands recently has continued its unlawful misappropriation of Plaintiffs' valuable and reputable intellectual property.

**DEFENDANTS' NEW INFRINGING ACTIVITIES**

48.     On information and belief, in or about 2016, without authorization from Plaintiffs, HandStands began using marks containing or comprising "Black Ice" (the "Infringing Black Ice Marks") on and in conjunction with the manufacture, marketing and sale of HandStands air fresheners and related products (the "Infringing Black Ice Products").



49.     Similar to Plaintiffs' products marketed and sold under their BLACK ICE Marks, HandStands has marketed the Infringing Black Ice Products as featuring a masculine fragrance,

{H3009969.1}                                    10

containing "bergamot" and "citrus" scents, elements of the fragrance associated with Plaintiffs' products marketed and sold under their BLACK ICE Marks.

50. Plaintiffs have not given permission to HandStands to manufacture, market, promote, advertise, distribute or sell the Infringing BLACK ICE Products (collectively, the "Infringing Products") or utilize the Infringing BLACK ICE Marks (collectively, the "Infringing Marks") in any manner.

51. On information and belief, the Infringing Products are marketed, promoted and advertised nationwide, including to consumers in New York.

52. On information and belief, HandStands targets the Infringing Products to consumers in New York, does business in New York and/or transacts business in New York, including within this judicial district.

53. On information and belief, the Infringing Products are marketed, promoted, advertised and available for shipping nationwide and have been shipped intentionally by HandStands or its distributors into New York.

54. The Infringing Marks copy the layout, look and/or commercial appeal of Plaintiffs' famous BLACK ICE Marks in a fashion likely to confuse consumers as to the source, affiliation or sponsorship of Handstand's products.

55. Given the close similarity between the Infringing Marks, on the one hand, and BLACK ICE Marks, on the other hand, and the products they respectively designate, consumers will likely assume, incorrectly, that the goods and services offered and sold in connection with the Infringing Marks, including the Infringing Goods, originate with Plaintiffs or that there is an affiliation between the parties, or that Plaintiffs have sponsored, endorsed, or approved HandStands and/or its goods, including the Infringing Goods.

56. HandStands' use of the Infringing Marks, including in connection with the manufacture, marketing, promotion, advertising, distribution and sale of the Infringing Products, is likely to cause confusion as to the source and origin of HandStands' products and is likely to cause confusion or mistake, or to deceive consumers as to the source or sponsorship of HandStands' products and to mislead the public into believing that HandStands' products emanate from, are approved or sponsored by, or are in some way associated or connected with Plaintiffs and/or Plaintiffs' marks.

57. Plaintiffs' BLACK ICE Marks have been famous since long prior to the time HandStands began its infringing and diluting acts complained of herein. HandStands' use of the Infringing Marks, including in connection with the marketing, promotion, advertising, distribution and sale of the Infringing Products, impairs and blurs the distinctiveness of Plaintiffs' famous BLACK ICE Marks and injures Plaintiffs' reputation as the source of high quality products.

58. On information and belief, HandStands was aware of Plaintiffs' BLACK ICE Marks, and the fame thereof, prior to the time HandStands adopted its Infringing Marks, but nevertheless recklessly disregarded Plaintiffs' rights through HandStands' unlawful actions.

59. On information and belief, consistent with its prior behavior, HandStands adopted the Infringing Marks with the intent to cause consumer confusion and/or to usurp Plaintiffs' goodwill in their BLACK ICE Marks.

60. On information and belief, HandStands adopted the Infringing Products to be a substitute for and direct competitor with Plaintiffs' famous air freshener and related products.

61. HandStands, by its acts complained of herein, has infringed Plaintiffs' BLACK ICE Marks, unfairly competed with Plaintiffs in the marketplace, and otherwise improperly used the

reputation and goodwill of Plaintiffs to promote its goods, which are not connected with, or authorized, approved, licensed, produced or sponsored by Plaintiffs.

62. The aforesaid acts of HandStands have caused and, unless restrained and enjoined by this Court, will continue to cause, irreparable damage, loss and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT I

### INFRINGEMENT OF A REGISTERED TRADEMARK (FEDERAL)

63. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 62 as if fully set forth herein.

64. Defendants' activities as described above constitute infringement of JSL's BLACK ICE Marks, in violation of the Lanham Act, 15 U.S.C. § 1114.

65. Defendants' acts of infringement have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

66. Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

67. Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT II

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (FEDERAL)

68. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 67 as if fully set forth herein.

69. Defendants' activities as described above constitute infringement of the BLACK ICE Marks, false designations of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

70. Defendants' acts of infringement, false designations of origin, and unfair competition have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

71. Defendants' have engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

72. Defendants' acts of infringement and unfair competition, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT III

## TRADEMARK DILUTION (FEDERAL)

73. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 72 as if fully set forth herein.

74. Plaintiffs' BLACK ICE Marks are famous and distinctive among the general consuming public in the United States, and have enjoyed such fame and distinctiveness since long before HandStands adopted and began use of the Infringing Marks.

75. Defendants' activities as described above are likely to dilute and impair the distinctiveness of Plaintiffs' famous BLACK ICE Mark in violation of 15 U.S.C. § 1125(c).

76. Defendants' acts of dilution have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

77. Defendants' engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

78. Defendants' acts of dilution, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT IV

## NEW YORK STATE DILUTION

79. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 78 as if set forth herein.

80. Plaintiffs' BLACK ICE Marks are extremely well-known and distinctive and have enjoyed such renown and distinctiveness since long before HandStands adopted and began use of the Infringing Marks.

81. Defendants' activities as described above blur the source-identifying capacity of Plaintiffs' BLACK ICE Marks, dilute the distinctiveness of such marks, and injure the business reputation of Plaintiffs, all in violation of Plaintiffs' rights under New York General Business Law § 360-l.

82. Defendants' violations of New York General Business Law § 360-l have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

83. Defendants' violations of New York General Business Law § 360-l, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT V

## UNFAIR COMPETITION (COMMON LAW)

84. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 83 as if set forth herein.

85. Defendants' activities as described above constitute unfair competition under the common law of the State of New York State.

86. Defendants' violations of New York State common law have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

87. Defendants' violations of New York State common law, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

  A. That Defendants', their agents, servants, officers, directors, employees, partners, representatives, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently, from:

    (1) Any manufacture, production, sale, distribution, advertisement, promotion, display or other exploitation of the Infringing Products;

    (2) Any use of the BLACK ICE Marks, or any other marks, designs, products, designations or displays confusingly similar thereto, including the Infringing Marks;

     (3) Committing any other acts calculated or likely to cause consumers to believe that Defendants and/or its goods and services are in any manner connected, affiliated or associated with or sponsored or approved by Plaintiffs; and

     (4) Committing any other acts likely to infringe or dilute Plaintiffs' BLACK ICE Marks or that constitute unfair competition with Plaintiffs.

    B. Pursuant to 15 U.S.C. § 1118, that Defendants deliver to Plaintiffs for destruction all units of the Infringing Products and all materials (including without limitation all advertisements, promotional materials, brochures, signs, displays, packaging, labels, stationary, business cards, website materials, and/or invoices), within its possession, custody or control, either directly or indirectly, that display or incorporate the BLACK ICE Marks, the Infringing Marks, or any other marks, designs, products, designations or displays confusingly similar thereto.

    C. Pursuant to 15 U.S.C. § 1116, that Defendants file with the Court and serve on counsel for Plaintiffs within thirty (30) days after the entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with paragraphs A and B above.

    D. Pursuant to 15 U.S.C. § 1117(a), that Defendants be directed to pay Plaintiffs an amount to be determined at trial for Plaintiffs' actual losses;

    E. Pursuant to 15 U.S.C. § 1117(a), that Defendants be directed to account to Plaintiffs for all gains, profits and advantages derived from Defendants' wrongful acts;

    F. Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action;

      G.      Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Defendants their attorneys' fees and costs in this action.

      H.      That Plaintiffs be awarded such other and further relief as the Court may deem equitable and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: February 16, 2017                                  Respectfully submitted,

By: _/s/ John G. Powers_

John G. Powers (BRN 508934)
HANCOCK ESTABROOK, LLP
jpowers@hancocklaw.com
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202
(315) 565-4500

*Counsel for Plaintiffs CAR-FRESHNER Corporation and Julius Sämann Ltd.*