

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
t 404 815 6500 f 404 815 6555

direct dial 404 815 6549
direct fax 404 541 3139
bbrewster@kilpatricktownsend.com

May 16, 2018

By eFile

The Honorable Andrew T. Baxter
U.S. Magistrate Judge
Federal Building and U.S. Courthouse
P.O. Box 7396
Syracuse, NY 13261-7396

      Re:    *CAR-FRESHNER CORPORATION, ET AL. v. AMERICAN COVERS, LLC ET AL.* CIVIL ACTION NO.: 5:17-CV-171 (TJM/ATB)

Dear Judge Baxter:

      We write on behalf of Defendants ("Energizer") in opposition to Plaintiffs' letter motion of May 4, 2018, which seeks additional, unnecessary fact discovery (a) on issues it knew about before fact discovery was over; (b) from witnesses that it knew existed during fact discovery; and (c) in a manner not proportional to the needs of the case . The issues raised by Plaintiffs are unfounded for those reasons discussed below, and Energizer requests that the Court deny Plaintiffs' letter motion.

Documents

      At the outset, Plaintiffs repeated reference to initial disclosures are misplaced. The Federal Rules of Civil Procedure have separate disclosure requirements for fact discovery and expert discovery, which is a reflection of the fact that they anticipate that facts and evidence will develop at the expert phase. For example, Energizer produced top-level revenue and cost data and some detail during fact discovery; Mr. Plumpe's review of that information led him to ask questions that required follow up in the form of understanding Energizer's (and Handstands') systems, and identifying and understanding issues with the data. Unlike counsel, Mr. Plumpe is an accounting expert; the questions he asked and issues he raised were not ones that Energizer possibly could have identified, much less anticipate *and* produce documents related to those issues or disclose those documents during fact discovery.

      Energizer has produced to Plaintiffs everything that Mr. Plumpe relied upon, the vast majority of which was produced during fact discovery. Energizer certainly had no obligation to produce the two documents raised in Plaintiffs' motion prior to producing Mr. Plumpe's report, as Energizer had not previously intended to rely upon those documents in this matter. *See* Fed. R. Civ. Proc. 26 (a)(1)(A) (initial disclosures under (i) and (ii) limited to individuals and documents that "the disclosing party may use"); *see also* Fed. R. Civ. Proc. 26 advisory committee note

The Honorable Andrew T. Baxter
March 19, 2018
Page 2

(2000) ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."). Additionally, Plaintiffs have the opportunity to depose Mr. Plumpe on his expert report, and therefore, already have ample opportunity to engage in the discovery they now seek. Plaintiffs request for extensive discovery of fact witnesses apart from Mr. Plumpe is unwarranted and disproportionate.

    Lightning Bolt and Ice Storm Data

Energizer stopped selling products with the dual scents Midnight Black and Ice Storm by at least as early as June 30, 2017. It replaced that product with one that was identical in every way except that the scent name Midnight Black was replaced with the scent name Lightning Bolt.[1] Energizer kept the scent name Ice Storm, and the actual scents remained exactly the same, as did all elements of the packaging except the single reference on the packaging to Midnight Black. During fact discovery, Energizer produced sales and cost data related to the Midnight Black and Ice Storm dual-scented product for the lifetime of that product.

Only late in the stages of Mr. Plumpe's work did he request similar data related to the Lightning Bolt and Ice Storm dual-scented replacement product because it was one element that he might use to do an apportionment analysis of Energizer's profits from sales of the Midnight Black and Ice Storm dual-scented products. Prior to that time, Energizer did not believe the information was relevant and asserted that objection (and others) accordingly. (Energizer's position was based, at least in part, on Plaintiffs' refusal to produce any documents not related to the exact scents at issue in this case).[2] Energizer also did not intend to rely on that data until Mr. Plumpe determined it would be useful, at least in part, for apportionment purposes. And when Mr. Plumpe did decide to use that data, it was produced to Plaintiffs "in a timely manner" as required by Rule 26(e). In fact, Energizer could not have produced that full data set – for July 2017 through March 2018 – during fact discovery because only a fraction of it would have been available. The data that Mr. Plumpe requested and used was comprehensive and up-to-date, and was provided in full to Plaintiffs.

---

[1] This name change occurred well after the initial disclosure deadline.

[2] This was not the only issue Energizer raised with respect to this data. We also noted that Plaintiffs failed to serve any document requests that covered the requested information—specifically, the documents were not responsive to Plaintiffs' Requests for Production Nos. 17 and 19 because they did not evidence or relate to actual confusion, nor did they "evidence, reflecting, or referring [to] steps" Defendants took to "mitigate damages." Plaintiffs never provided any other reason why they thought the requested data was relevant. Moreover, after the parties' February 13, 2018 call with the Court, in which the Court held that all the requests for discovery pending before the Court that arose from the depositions of the parties' various witnesses were to be considered "requests for supplemental information as a result of the depositions," ECF 53 at 2, Plaintiffs never followed up with Energizer about *any* of the discovery issues raised in Plaintiffs' post-deposition letters, unlike Energizer who did follow up with Plaintiffs regarding the market research issues previously ruled upon by the Court. Plaintiffs also did not move to compel Energizer to produce this data.

The Honorable Andrew T. Baxter
March 19, 2018
Page 3

Furthermore, Plaintiffs have not and cannot articulate any harm they have suffered, as the data was produced to them shortly after we determined Mr. Plumpe would be relying on that data in connection with his expert report; the data is in the same format as the Midnight Black and Ice Storm dual-scented product data that was produced previously and on which Plaintiffs already deposed Energizer's 30(b)(6) witness, Mike Lampman. Lampman Dep. 82:6-107:15; 165:22-167:19.[3] Indeed, Plaintiffs fail to articulate with any specificity what additional information they need about this data or why the deposition of Mr. Plumpe will not sufficiently take care of whatever additional discovery it is they think they need. Plaintiffs' request for three days of depositions in Syracuse from witnesses who reside in Utah and Missouri and who had relatively short conversations with Mr. Plumpe is unreasonable.

Cost Data

Plaintiffs' letter does not articulate what additional "cost data" they are referring to, but Energizer assumes for the purposes of this response that Plaintiffs are referring to the document Energizer produced as HS0021897, which is attached as **Exhibit 2** to this letter. HS0021897 is an excel file that consists of five tabs. [redacted]

The first tab was produced during fact discovery as HS0021895 (attached as **Exhibit 3**). Energizer also produced, during fact discovery, top-level revenue and cost data and detail (attached as **Exhibit 4** are examples of such data), which utilized the numbers from Exhibit 3 (and the first tab of Exhibit 2).[5] As for the remaining four tabs, each of these categories are referenced at a top-level in Exhibits 3 and 4, which again, Plaintiffs had during fact discovery. Indeed, Plaintiffs questioned Mr. Lampman extensively both on Exhibit 4 and the very issues they now contend they need discovery on— [redacted]

---

[3] Relevant excerpts of the deposition of Mike Lampman ("Lampman Dep.") are attached as **Exhibit 1**.
[4] Plaintiffs never asked for this particular information with any specificity—they simply asked for "back up" data. Energizer had already produced everything that it intended to rely on, which was more than enough data to support Energizer's costs.
[5] In fact, the Court may recognize Exhibit 4, which was used at the mediation, shared with Plaintiffs' counsel, and then, at their request, shared with Mr. Daniel Samann so that he could see that top-level cost detail.

The Honorable Andrew T. Baxter
March 19, 2018
Page 4

███████████████.[6] Lampman Dep. 82:6-107:15; 165:22-167:19. Plaintiffs fail to explain what additional information they could possibly need, what additional questions they might ask of a witness, why they failed to seek this information during fact discovery, or why the deposition of Mr. Plumpe will not sufficiently take care of whatever additional discovery it is they think they need.[7] Finally, the last four tabs in Exhibit 3 *did not exist* in Energizer's financial systems—the data had to be compiled and the tabs created, which was done at Mr. Plumpe's specific request for this specific data.

Witnesses

Plaintiffs' feigned surprise that Mr. Plumpe might have to talk to people at Energizer to understand Energizer documents and systems, or to ask for additional information he might want to consider in preparing his expert report does not ring as sincere. It is routine for expert witnesses to follow up in that manner because the information they need is not always available through documents produced by the parties or through deposition testimony (particularly given that the deposing party is not the party the expert is hired by). And here, where some data was from the Handstands accounting system, and other from the Energizer accounting system, it is wholly unsurprising that Mr. Plumpe had questions regarding software systems and accounting practices that required follow up so that Mr. Plumpe knew, among other things, that he could rely on the data that had been produced already in the case.

Moreover, Plaintiffs were well aware of the existence of and scope of knowledge of Ms. Rasmussen, Mr. Sedlak, and Mr. Jensen during fact discovery and could have deposed them at any time. In fact, they did depose Ms. Rasmussen. Plaintiffs fail to offer any persuasive reason as to why they should be permitted to conduct additional discovery.

As is evident from Mr. Plumpe's report, including that he does not cite to his conversation with Mr. Jensen anywhere in his report other than to disclose the conversation occurred, Mr. Jensen's role here was limited. As we explained to Plaintiffs already, Mr. Jensen simply pulled the data found in a single document cited by Mr. Plumpe: "Auto Care Invoice Sales by SKU by Month Oct 15 to Feb 18.xlsx"—a document for which Plaintiffs do not contend they need additional discovery. Mr. Jensen's very brief conversation with Mr. Plumpe involved

---

[6] ███████████████████████ E.g., Lampman Dep. 98:3-13, 99:13-17, 101:17-25; 165:22-167:19.

[7] To the extent Mr. Lampman did not know the answer to every single question asked about these topics, Plaintiffs never requested additional deposition testimony during fact discovery, and Mr. Lampman made it clear that Mr. Sedlak had the information, as discussed further below. Plaintiffs never sought to depose Mr. Sedlak until now. Moreover, Mr. Sedlak also did not know this information or the information produced in Exhibit 2 off the top of his head (nor would he have known it during a deposition)—he had to do research to find the relevant information and then compile it into a producible form.

The Honorable Andrew T. Baxter
March 19, 2018
Page 5

him explaining what software system he pulled the data from and what the data consisted of—all issues that can be addressed during Mr. Plumpe's deposition if necessary.

Moreover, Mr. Plumpe's report is also not the first time Plaintiffs were aware of Mr. Jensen or his role at Energizer. Energizer produced hundreds of documents that refer to or were sent to and from Mr. Jensen (including documents which made clear that Mr. Jensen had access or pulled data similar to that data found in "Auto Care Invoice Sales by SKU by Month Oct 15 to Feb 18.xlsx"). In addition, Mr. Jensen and his role at Energizer as a financial analysis (including that he was asked to pull data specifically related to this case) was discussed by Chris Anderson (Anderson Dep. 35:9-36:15, 37:14-17, 54:6-9, 86:16-21)[8], Ben Wall (Wall Dep. 61:17-62:12)[9], and Ms. Rasmussen (Rasmussen Dep. 116:5-6, 146:8-24, 147:16-23)[10] in their depositions.

As is clear from his report, Mr. Plumpe spoke to Ms. Rasmussen about Energizer's automotive air freshener business generally, as well as her understanding of why the Midnight Black and Ice Storm products were created. Given that Plaintiff discussed these same topics with her at her deposition, see e.g., Rasmussen Dep. 15:15-24:21 120:19-126:11, 130:13-132:8, and given that Energizer produced over 1,000 documents that refer to or were sent from or to Ms. Rasmussen revealing the breadth and scope of her knowledge about Energizer's air freshener business, Plaintiffs could not have been surprised that she would have relevant knowledge on the topics outlined in Plaintiffs' motion. Plaintiffs also had the opportunity to depose Michelle Atkinson, Energizer's 30(b)(6) witness on topics relevant to the issues Mr. Plumpe and Ms. Rasmussen discussed, and in fact, asked her about some of the same issues Mr. Plumpe discussed with Ms. Rasmussen (e.g., the consumer decision-making process, Atkinson Dep. 99:25-100:16).[11] The fact that Defendants failed to ask either Ms. Rasmussen or Ms. Atkinson about topics clearly within their scope of knowledge (e.g., ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 70 at 7) is not Energizer's fault.

Further, all of the relevant citations in Mr. Plumpe's report show that his conversation with Ms. Rasmussen simply confirmed the testimony of other Energizer witnesses, including Energizer's 30(b)(6) witnesses Michelle Atkinson and Mike Lampman, Ms. Rasmussen's own deposition testimony, or the contents of documents produced by Energizer during fact discovery.

With regard to Mr. Sedlak, Plaintiffs have long been aware of his existence, his role at Energizer, and his knowledge related to this case, including that he created some of the

---

[8] Relevant excerpts of the deposition of Chris Anderson ("Anderson Dep.") are attached as **Exhibit 5**.

[9] Relevant excerpts of the deposition of Ben Wall ("Wall Dep.") are attached as **Exhibit 6**.

[10] Relevant excerpts of the deposition of Kathy Rasmussen ("Rasmussen Dep.") are attached as **Exhibit 7**.

[11] Relevant excerpts of the deposition of Michelle Atkinson ("Atkinson Dep.") are attached as **Exhibit 8**.

The Honorable Andrew T. Baxter
March 19, 2018
Page 6

documents Mr. Plumpe relied upon. Indeed, Mr. Lampman testified that Mr. Sedlak is Energizer's finance director and was involved in preparing the cost allocations relied upon by Mr. Plumpe as discussed above (and shown in Exhibits 2 and 4), and further, that Mr. Lampman was basing his 30(b)(6) testimony at least in part on information he obtained from Mr. Sedlak. Lampman Dep. 84:4-88:4, 106:8, 167:4. Despite being aware of Mr. Sedlak and his role in this matter, Plaintiffs never even raised the issue of deposing Mr. Sedlak or reopening the deposition of Mr. Lampman.

Finally, the fact that Ms. Rasmussen, Mr. Sedlak, and Mr. Jensen were not identified in Energizer's initial disclosures or as a 30(b)(6) witnesses is completely irrelevant. As to the initial disclosures, Energizer was not aware at the time of those disclosures that Ms. Rasmussen, Mr. Sedlak, or Mr. Jensen had discoverable factual information regarding Energizer's costs, and therefore was not required to disclose them pursuant to Rule 26(a)(1)(A). While Energizer was not aware at the initial disclosure stage (and even at this point *still does not intend to call them or use them as witnesses in this case*), the existence of these individuals was disclosed in voluminous documents produced and at depositions, as discussed in further detail above, and then again timely disclosed to Plaintiffs and addressed in detail by Mr. Plumpe's report, all of which are sufficient to comply with Energizer's obligations under Rule 26(e). Fed. R. Civ. P. 26(e) (noting that a party must supplement its initial disclosures only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process…."); *see also BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013).

As for identifying 30(b)(6) witnesses, many people at Energizer have overlapping knowledge regarding the air freshener business—including Ms. Rasmussen, Mr. Sedlak, Mr. Jensen, Ms. Atkinson, and Mr. Lampman. Mr. Plumpe had no need to talk to all of them, particularly in light of Mr. Lampman's and Ms. Atkinson's high positions in the company, and extremely busy schedules (including extensive travel taking place during the preparation of the report). Nor was Energizer required to designate as 30(b)(6) witnesses every single person with knowledge on a topic. Instead, Energizer was required to designate someone who could "testify about information known or reasonably available to" Energizer, which Energizer did. Plaintiffs never sought to reopen the 30(b)(6) deposition (except with regard to a trademark search issue from Ms. Atkinson's deposition on which the parties eventually reached a stipulation); having obtained testimony on every topic, Plaintiffs cannot now complain that Energizer's testimony was deficient.

Plaintiffs had ample opportunity to fully explore the topic of its damages and Energizer's profits with Energizer's fact witnesses and during fact discovery but failed to do so. Any surprise Plaintiffs are now experiencing is a result of that failure, and not of Energizer's actions.

Sincerely,

*[signature]*


The Honorable Andrew T. Baxter
March 19, 2018
Page 7

                                      William H. Brewster

Cc: Counsel of record

# EXHIBIT 1

Provisionally Filed Under Seal

# EXHIBIT 2

Provisionally Filed Under Seal

# EXHIBIT 3

Provisionally Filed Under Seal

# EXHIBIT 4

Provisionally Filed Under Seal

# EXHIBIT 5

Provisionally Filed Under Seal

# EXHIBIT 6

Provisionally Filed Under Seal

# EXHIBIT 7

Provisionally Filed Under Seal