# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CAR-FRESHNER CORPORATION,
and JULIUS SAMANN LTD.,

Plaintiffs,

v.

AMERICAN COVERS, LLC F/K/A
AMERICAN COVERS, INC. D/B/A
HANDSTANDS, ENERGIZER HOLDINGS,
INC., and ENERGIZER BRANDS, LLC,

Defendants.

Civil Action No. 5:17-cv-171 (TJM/ATB)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  BACKGROUND ......................................................................................1

    A.  Energizer and Its Automotive Air Freshener Business.............................1

    B.  Energizer's Midnight Black and Ice Storm Dual-Scented Products and Boardwalk Breeze Scented Product.........................................................2

    C.  The Complaint ...................................................................................2

    D.  The Amended Complaint ....................................................................3

II. ARGUMENT ..........................................................................................4

    A.  Plaintiffs Cannot Prove Trademark Infringement or Unfair Competition..............5

        1.  The Parties' Marks Are Not Similar as a Matter of Law.............................8

        2.  Plaintiffs' Marks Are Weak.................................................................12

        3.  Plaintiffs Have No Evidence of Actual Confusion...................................13

        4.  Energizer Did Not Act in Bad Faith .....................................................14

        5.  The Proximity of the Products Indicates Confusion Is Not Likely ...........16

        6.  Purchasers Are Not Unsophisticated ....................................................17

        7.  The Final Two Confusion Factors Are Irrelevant ...................................17

    B.  Plaintiffs Cannot Prove Their Federal Dilution Claims............................17

        1.  Plaintiffs Cannot Show Their Marks Are Famous ..................................17

            a.  Empirical Evidence Shows Plaintiffs' Marks Are Not Famous......................................................................... 19

            b.  Actual Recognition of Plaintiffs' Marks Is Non-Existent........... 19

            c.  There Is Insufficient Evidence Regarding the Duration, Extent, or Geographic Reach of Plaintiffs' Advertising.............. 20

            d.  Plaintiffs' Sales Are Insufficient to Support a Claim of Fame.................................................................................. 21

            e.  Plaintiffs' Trademark Registrations Do Not Show Fame............ 21

        2.  Plaintiffs Cannot Show a Likelihood of Dilution by Blurring .................22

    C.  Plaintiffs' Claims for Dilution Under New York Law Fail as a Matter of Law ...................................................................................................22

    D.  Energizer Is Not Liable for Direct Infringement ..................................23

E.    Plaintiffs Are Not Entitled to Injunctive Relief ....................................................24

F.    Plaintiffs' Request for Treble Accounting of Profits Fails as a Matter of Law ...........................................................................................................................25

III.    CONCLUSION ..............................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Akiro LLC v. H. of Cheatham, Inc.*,
   946 F. Supp. 2d 324 (S.D.N.Y. 2013) ....................................................................... 23

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F.2d 252 (5th Cir. 1980) ................................................................................... 20

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 5

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) ................................................................................... 21

*BeautyBank, Inc. v. Harvey Prince LLP*,
   No. 10-Civ-955 (DAB) (GWG), 2011 WL 671749 (S.D.N.Y. Feb. 24, 2011) ....................... 25

*Biosafe-One, Inc. v. Hawks*,
   524 F. Supp. 2d 452 (S.D.N.Y. 2007) ...................................................................... 20

*Bubble Genius LLC v. Smith*,
   239 F. Supp. 3d 586 (E.D.N.Y. 2017) ....................................................................... 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................. 4, 5

*Coach Servs., Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ............................................................................... 18

*E.S. Originals Inc. v. Stride Rite Corp.*,
   656 F. Supp. 484 (S.D.N.Y. 1987) .......................................................................... 14

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgt. Co.*,
   718 F. Supp. 2d 292 (E.D.N.Y. 2010) ...................................................................... 23

*Frink Am., Inc. v. Champion Rd. Mach. Ltd.*,
   48 F. Supp. 2d 198 (N.D.N.Y. 1999) ........................................................................ 24

*Greilsheimer v. Ferber Chan & Essner*,
   No. 98 CIV. 2553 (LMM), 1998 WL 547092 (S.D.N.Y. Aug. 27, 1998) ............................ 24

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
   991 F.2d 1072 (2d Cir. 1993) ................................................................................... 11

*House of Bryant Publ'ns, LLC v. City of Lake City, Tenn.*,
   30 F. Supp. 3d 711 (E.D. Tenn. 2014) ...................................................................... 21

*Kind LLC v. Clif Bar & Co.*,
   No. 14 Civ. 770(KMW)(RLE), 2014 WL 2619817 (S.D.N.Y. June 12, 2014) ...... 14, 15, 16, 17

*Lane Capital Mgmt, Inc.. v. Lane Capital Mgmt., Inc.*,
   15 F. Supp. 2d 389 (S.D.N.Y. 1998) ........................................................................ 20

*Lang v. Ret. Living Publ'g Co.*,
   949 F.2d 576 (2d Cir. 1991) ............................................................. 7, 13

*Lebewohl v. Heart Attack Grill LLC*,
   890 F. Supp. 2d 278 (S.D.N.Y. 2012) ...................................................... 7

*Legends Are Forever, Inc. v. Nike, Inc.*,
   58 F. Supp. 3d 197 (N.D.N.Y. 2014) ........................................ 6, 11, 17, 22

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
   841 F. Supp. 2d 753 (S.D.N.Y. 2012) .................................................... 18

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016),
   *aff'd*, 720 F. App'x 24 (2d Cir. 2017) .......................................... passim

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
   287 F. Supp. 2d 355 (S.D.N.Y. 2003) ............................................ 7, 14, 15

*Malletier v. Dooney & Bourke, Inc.*,
   561 F. Supp. 2d 368 (S.D.N.Y. 2008) .............................................. 7, 13, 14

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................... 4, 5

*McGregor-Doniger Inc. v. Drizzle Inc.*,
   599 F.2d 1126 (2d Cir. 1979) ............................................................ 13

*Medici Classics Prods., LLC v. Medici Grp.*,
   683 F. Supp. 2d 304 (S.D.N.Y. 2010) .............................................. 7, 8, 14

*Mobileye, Inc. v. Picitup Corp.*,
   928 F. Supp. 2d 759 (S.D.N.Y. 2013) .................................................... 23

*N.Y. Stock Exch., Inc. v. N.Y., N.Y.Hotel LLC*,
   293 F.3d 550 (2d Cir. 2002) ........................................................... 7, 14

*Nabisco v. Warner-Lambert Co.*,
   32 F. Supp. 2d 690 (S.D.N.Y. 1999) ..................................................... 13

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d Cir. 2000) ........................................................ passim

*New Sensor Corp. v. CE Distrib. LLC*,
   303 F. Supp. 2d 304 (E.D.N.Y.),
   *aff'd*, 121 F. App'x 407 (2d Cir. 2004) .............................................. 7, 11

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   269 F.3d 114 (2d Cir. 2001) ........................................................ 7, 13, 16

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
   496 F.3d 1231 (11th Cir. 2007) ........................................................... 23

*Paco Sport, Ltd. v. Paco Rabanne Parfums*,
   86 F. Supp. 2d 305 (S.D.N.Y. 2000),
   *aff'd* 234 F.3d 1262 (2d Cir. 2000) .................................................... 14

*Playtex Prods., Inc. v. Ga.-Pac. Corp.*,
    390 F.3d 158 (2d Cir. 2004) ................................................................ passim

*Primepoint. L.L.C. v. Primepay, Inc.*,
    401 F. App'x 663 (3d Cir. 2010) ................................................................ 24

*Rush Indus., Inc. v. Garnier LLC*,
    496 F. Supp. 2d 220 (E.D.N.Y. 2007),
    *aff'd*, 309 F. App'x 431 (2d Cir. 2009) ............................................ 7, 8, 14

*S&L Vitamins, Inc. v. Austl. Gold, Inc.*,
    521 F. Supp. 2d 188 (E.D.N.Y. 2007) ...................................... 5, 20, 21

*Savin Corp. v. Savin Grp.*,
    391 F.3d 439 (2d Cir. 2004) ............................................................ 7, 17

*Scholastic, Inc. v. Speirs*,
    28 F. Supp. 2d 862 (S.D.N.Y. 1998) ............................................... 22

*Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*,
    965 F. Supp. 925 (E.D. Mich. 1997) ................................................ 20

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009) ......................................................... 15, 22

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998) ....................................................... 13, 15

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
    244 F.3d 88 (2d Cir. 2001) ............................................................... 21

*Thoip v. Walt Disney Co.*,
    736 F. Supp. 2d 689 (S.D.N.Y. 2010) ........................................... 7, 14

*Thompson v. Haynes*,
    305 F.3d 1369 (Fed. Cir. 2002) ....................................................... 25

*T-Mobile US, Inc. v. Aio Wireless LLC*,
    991 F. Supp. 2d 888 (S.D. Tex. 2014) ............................................ 19

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997) .................................................. 20

*U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*,
    No. 09-Civ-5517 (RMB) (AJP), 2009 WL 4351962 (S.D.N.Y. Dec. 1, 2009) ...................... 25

*United Pet Grp., Inc. v. Axon US, Corp.*,
    No. 13-cv-126 (WFK) (MDG), 2013 WL 5592617 (E.D.N.Y. Oct. 10, 2013) ...................... 24

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) ....................................................................... 24

*Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*,
    630 F. Supp. 2d 255 (E.D.N.Y. 2008) ............................................. 24

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000) ............................................................... 5

## Statutes

15 U.S.C. § 1117(a) ................................................................................................ 25

15 U.S.C. § 1125 .......................................................................................... 17, 18, 22

## Other Authorities

2 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 11:85 .................................. 12

4 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 24:104 ...................... 18, 19, 21

6 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 32:189 .................................. 14

*Restatement (Third) of Unfair Competition*, § 25 comment e, 268-39 (1995) ............................ 19

## Rules

Fed. R. Civ. P. 56 ...................................................................................................... 5

Defendants (collectively, "Energizer") move for summary judgment on all claims because, despite comprehensive fact and expert discovery, Plaintiffs have not developed significant, probative evidence on essential elements of the trademark claims on which they bear the burden of proof, and the record evidence produced shows that Plaintiffs cannot prove their claims. Specifically, *Plaintiffs cannot prove* that:

(1) Energizer's use of the dual-scent names Midnight Black and Ice Storm or the scent name Boardwalk Breeze in connection with Refresh Your Car! brand air fresheners create a *likelihood of confusion* with Plaintiffs' Black Ice or Bayside Breeze marks used with Little Trees brand air fresheners;

(2) Plaintiffs' Black Ice or Bayside Breeze scent names are *famous* marks, or that consumers *associate* Energizer's products with Plaintiffs' marks;

(3) Plaintiffs' marks are *substantially similar* to the Midnight Black and Ice Storm dual scent names and Boardwalk Breeze scent name;

(4) Energizer engaged in *direct infringement*;

(5) Plaintiffs are entitled to *injunctive relief*; or

(6) Plaintiffs are entitled to a *trebling of an accounting for profits*.

Energizer is entitled to summary judgment on each issue, and all of Plaintiffs' claims.

# I.     BACKGROUND[1]

## A.     Energizer and Its Automotive Air Freshener Business

Energizer is a global leader in the business of providing portable power and lighting solutions, including batteries under the famous Energizer and Energizer Bunny marks. In July 2016, Energizer acquired Handstands, which offered automotive air freshener and appearance products from Refresh Your Car!®, one of the top-selling brands, as well as other recognized brands like California Scents®, Driven®, and Bahama & Co.® SMF ¶¶ 1-2.

---

[1] Energizer's separately-filed Statement of Material Facts includes all of the undisputed material facts relied upon by Energizer, and this motion refers to that document —with individual Paragraphs cited as "SMF ¶ #"— when necessary.

B. **Energizer's Midnight Black and Ice Storm Dual-Scented Products and Boardwalk Breeze Scented Product**

In December 2016, Energizer began selling two new products (to retailers and distributors) under the Refresh Your Car! brand: (1) a line of dual-scented air fresheners using the names Midnight Black and Ice Storm[2]; and (2) vent sticks with the scent name Boardwalk Breeze, as shown below. SMF ¶¶ 5, 9, 10. Handstands chose these scent names prior to Energizer's acquisition. SMF ¶ 8.[3]



C. **The Complaint**

Filed in February 2017, Plaintiffs' Complaint alleged that the dual scents Midnight Black and Ice Storm on the products shown above infringed and diluted Plaintiffs' Black Ice mark, which is a scent for a line of air fresheners Plaintiffs sell under their Little Trees brand in packaging with a yellow background, a green pine tree logo (the "Tree Design Mark"), and a red Little Trees logo (shown below)—packaging Plaintiffs contend is highly distinctive and immediately recognizable by consumers. SMF ¶ 12, 13, 32-34.

---

[2] Energizer has used the Ice Storm scent name alone for years in connection with air fresheners sold under its DRIVEN line of products. SMF ¶ 37.

[3] Energizer purchased Handstands in July 2016, but integration was slow to start, with integration efforts starting in March 2017 and continuing until May 2017. SMF ¶ 4.



Although believing Plaintiffs' claims to be without merit,[4] Energizer quickly decided it was more efficient to switch to a new scent name. Energizer notified Plaintiffs of the decision to stop selling the Midnight Black and Ice Storm dual-scented products, and that a U.S. sell-off period would end no later than June 30, 2017. SMF ¶ 16.

**D.     The Amended Complaint**

On April 1, 2017, after Energizer said that it would stop using the Midnight Black and Ice Storm scent names together, Plaintiffs filed an Amended Complaint alleging that Energizer's Boardwalk Breeze infringed and diluted Plaintiffs' Bayside Breeze (below). SMF ¶¶ 17-19.



Despite the lack of merit of these new claims (and because Energizer already had decided

---

[4] In addition to other third-party uses, Handstands long has used ICE, ICE STORM, and BLACK OUT without complaint from Plaintiffs. SMF ¶¶ 37, 41, 43, 47.  The parties' products also were sold under very different house marks with very different packaging. SMF ¶¶ 60-99.

to end sales of Boardwalk Breeze due to low sales), Energizer notified Plaintiffs—shortly after receipt of the Amended Complaint—that Energizer had decided to stop selling Boardwalk Breeze, and that a U.S. sell-off would end no later than June 30, 2017. SMF ¶¶ 22-23.

Energizer was true to its word and stopped selling, and quarantined, both the Midnight Black and Ice Storm and Boardwalk Breeze products by June 30, 2017. SMF ¶ 24. The dual-scent product was replaced with the Lightning Bolt and Ice Storm products depicted below[5]:



## II.   ARGUMENT

Energizer is entitled to summary judgment of nonliability under Federal Rule of Civil Procedure 56(a), which mandates the disposition of claims if the evidence shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because Energizer has demonstrated that no genuine disputes of material fact exist, the burden shifts to Plaintiffs to establish the existence of such a genuine dispute. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiffs cannot rest on mere denials of the pleadings or conclusory assertions, but instead must present specific facts showing the existence of a genuine factual dispute for

---

[5] Energizer's replacement, Lightning Bolt and Ice Storm, used the same SKU number. When Energizer first produced sales data in this case, it inadvertently included some of the Lighting Bolt version. Even after receiving corrected data, Plaintiffs continue to "dispute" those numbers, but it is not "material" whether the sales ended on June 30, 2017 or in July 2017.

trial. *See* Fed. R. Civ. P. 56(e).[6] Plaintiffs also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Indeed, when a motion for summary judgment is made, it is time to 'to put up or shut up.... [U]nsupported allegations do not create a material issue of fact.'" *S&L Vitamins, Inc. v. Austl. Gold, Inc.*, 521 F. Supp. 2d 188, 198 (E.D.N.Y. 2007) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)) (alterations in original).

Energizer moves on claims where Plaintiffs bear the burden of proof—claims for which Plaintiffs do not have adequate evidence, and Energizer is entitled to summary judgment. *Celotex*, 477 U.S. at 322 ("Rule 56[] mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A.      **Plaintiffs Cannot Prove Trademark Infringement or Unfair Competition**

Plaintiffs have filed dozens and dozens of lawsuits alleging that their tree-shaped paper products, the Tree Design Mark, and their Little Trees name are famous and distinctive and that consumers "exclusively associate[]" those marks with Plaintiffs. SMF ¶ 31; *see also* ECF No. 13 at ¶¶ 2, 15. Plaintiffs have alleged the existence of a "famous" trade dress—"distinctive yellow product packaging with the brand name appearing diagonally across the top, with Plaintiffs' distinctive Tree Design Mark in the corner of its prominently yellow packaging as a corporate logo"—appearing on *all* of Plaintiffs' products, including the products in this case. SMF ¶¶ 32-33. Plaintiffs' witnesses have testified under oath that consumers—who Plaintiffs contend only spend seconds making purchasing decisions related to air fresheners—recognize Plaintiffs'

---

[6] Disputed facts not affecting the outcome do not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial,'" and the moving party must prevail as a matter of law. *Id.* at 261.

products on the shelves instantly by their trade dress and the "sea of yellow" that distinguishes Plaintiffs' products from all others. SMF ¶ 34.

Plaintiffs now apparently contend that, when viewing Energizer's products, consumers (a) ignore the fact that Energizer's products do not bear any tree-shaped designs, do not use anything remotely similar to the Little Trees brand name, and do not use yellow packaging, and (b) ignore the prominent display of Energizer's Refresh Your Car! logo, and, instead, focus on the miniscule scent names on Energizer's products and are likely to be confused by those scent names. Plaintiffs' position—proffered without any survey or actual confusion—is untenable.

To prove their claims for infringement and unfair competition, Plaintiffs must prove that Energizer's use of the scent names Midnight Black and Ice Storm and Boardwalk Breeze "is likely to confuse consumers as to the source or sponsorship of" Energizer's products. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000).[7] "The likelihood-of-confusion inquiry turns on whether numerous ordinary prudent purchasers are somehow likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 161 (2d Cir. 2004).

Here, Energizer is entitled to summary judgment under this Circuit's test for likelihood of confusion, which turns on the following eight non-exclusive "*Polaroid* factors":

(1) the strength of plaintiff's mark;
(2) the similarity of the parties' marks;
(3) the proximity of the parties' products in the marketplace;
(4) the likelihood that the plaintiff will "bridge the gap" between the products;
(5) actual consumer confusion between the two marks;

---

[7] "The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror analogous federal claims," *Legends Are Forever, Inc. v. Nike, Inc.*, 58 F. Supp. 3d 197, 210 (N.D.N.Y. 2014) (internal quotations omitted), with the additional requirement "that the plaintiff show defendant's bad faith" under New York unfair competition law. *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) ("[n]ot every act, even if taken in bad faith, constitutes unfair competition").

(6) the defendant's intent in adopting its mark;
(7) the quality of the defendant's product; and
(8) the sophistication of the relevant consumer group.

*Id*. at 162. "Where the predicate facts are beyond dispute, the proper balancing of these factors is considered a question of law." *Id*. "[A] court [should not] treat the inquiry as a mechanical process by which the party with the greatest number of factors wins." *Id*. "Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." *Id*. "To support a finding of infringement, there must be a 'probability of confusion, not a mere possibility.' *This standard does not change on summary judgment*." *Id*. (emphasis added).

The Second Circuit has not hesitated to affirm summary judgment for defendants where a review of all factors indicated confusion was unlikely, even when multiple factors weighed against the defendant.[8] District courts also regularly grant summary judgment for defendants under those circumstances.[9] Here, *all* of the factors favor a finding that confusion is not likely or are, at worst, neutral.

---

[8] *See, e.g., Playtex Prods.*, 390 F.3d at 162 (affirming summary judgment despite five factors weighing in plaintiff's favor); *Savin Corp. v. Savin Grp*., 391 F.3d 439, 462 (2d Cir. 2004) (affirming summary judgment for defendant despite similarity of marks favoring plaintiff); *N.Y. Stock Exch., Inc. v. N.Y., N.Y.Hotel LLC*, 293 F.3d 550, 556 (2d Cir. 2002) (affirming summary judgment for defendant despite strength of plaintiff's mark); *Nabisco*, 220 F.3d at 47 (affirming summary judgment for defendant based on differences between overall marks despite being competitive products); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (affirming summary judgment); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir. 1991) (affirming summary judgment) ("New Choices for the Best Years" magazine does not infringe "New Choices Press" books); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 677 (S.D.N.Y. 2016) (granting summary judgment even though product proximity favored plaintiff), *aff'd*, 720 F. App'x 24 (2d Cir. 2017).

[9] *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278 (S.D.N.Y. 2012); *Medici Classics Prods., LLC v. Medici Grp.*, 683 F. Supp. 2d 304, 312 (S.D.N.Y. 2010); *Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689 (S.D.N.Y. 2010); *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 390 (S.D.N.Y. 2008); *Rush Indus., Inc. v. Garnier LLC*, 496 F. Supp. 2d 220, 230 (E.D.N.Y. 2007), *aff'd*, 309 F. App'x 431 (2d Cir. 2009); *New Sensor Corp. v. CE Distrib. LLC*, 303 F. Supp. 2d 304, 315 (E.D.N.Y.), *aff'd*, 121 F. App'x 407 (2d Cir. 2004); *Malaco Leaf, AB v. Promotion in Motion, Inc.* 287 F. Supp. 2d 355, 377 (S.D.N.Y. 2003).

### 1.     The Parties' Marks Are Not Similar as a Matter of Law

Energizer is entitled to summary judgment because the parties' marks are distinguishable.

"In assessing similarity, courts look to *the overall impression created by the [marks] and the context in which they are found* and consider the totality of factors that could cause confusion among prospective purchasers." *LVL XIII Brands*, 209 F. Supp. 3d at 668 (emphasis added). While "at first blush, the use of the same word appears to weigh in favor of similarity, the use of the same words is far from dispositive." *Medici Classics*, 683 F. Supp. 2d at 311 ("This is a case where the overall impression created by the marks is dissimilar despite the use of the same word.") (quoting *Rush Indus.*, 496 F Supp. 2d at 226 ("Long n' Strong" and "Long & Strong" dissimilar)). In fact, "[i]n an appropriate case, the similarity-of-marks factor may alone be dispositive. Indeed, the court may in some circumstances grant summary judgment even without considering all of the [relevant] factors." *Playtex Prods.*, 390 F.3d at 166-67; *see also Nabisco, Inc.*, 220 F.3d at 48 ("Having determined that the parties' use of their marks is so dissimilar as to require judgment for [Defendant], we need not examine the remaining *Polaroid* factors and express no view of the district court's analysis of them."). Here, the lack of similarity alone is a basis on which the Court should grant Energizer's motion.

In *Nabisco*, the Second Circuit affirmed on summary judgment that the defendant's use of DENTYNE ICE did not infringe the plaintiff's ICE BREAKERS mark because both the marks at issue, and the "overall impression created by the context in which they are found," were very different for the following reasons:

(1) "the varying placement of 'Ice' is a major difference";

(2) defendant "prominently, indeed primarily" identified its product with the "Dentyne" house brand;

(3) the marks were "starkly different in typeface and styles";

8

(4) although the packages "share a … shape, there are salient differences in both their dimensions and look";

(5) "although both packages use blue and white colors, the shades and patterns of these colors are different";

(6) "the wrapping used on the respective packages is dissimilar"; and

(7) "the products are sold in different forms … a pellet and … a traditional stick."

220 F.3d at 46-47. The "cumulative effect of the differences" meant that the parties' marks were "so dissimilar as to require judgment" for the defendant without the need to "examine the remaining *Polaroid* factors." *Id*. at 47-48.

In this case, the parties' respective marks and packaging are even more different for a long list of reasons, including—tracking the *Nabisco* outline—the following[10]:

1) <u>The obviously "varying placement"</u> of the words Midnight Black and Ice Storm as separate names (on separate lines or in different colored ovals/circles),[11] and Black Ice.[12]

2) <u>The prominent, respective house marks</u>, Little Trees and Refresh Your Car!. Plaintiffs' products *all* bear the purportedly-famous Little Trees name, the Tree Design Mark, and bright yellow packaging.[13] The accused products *all* prominently display the stylized mark Refresh Your Car!—a top-selling brand with hundreds of millions of dollars of total sales, including over $50 million annually in recent years.

---

[10] SMF ¶¶ 9-10, 14-15, 20, 33, 35-36, 60-99.

[11] Marketing materials for the trade sometimes used a slash between Midnight Black and Ice Storm, but those materials were not seen by consumers. SMF ¶ 100.

[12] Obviously, Boardwalk Breeze and Bayside Breeze also appear in different places on their respective packaging. And while some online retailers (*not* Energizer) referred to this product in text as "Midnight Black/Ice Storm," online pictures of the product packaging clearly delineated between the two scents. SMF ¶ 101. Moreover, Energizer's online sales of air fresheners are minimal, and Plaintiffs have no evidence of any online sale to or purchase of the allegedly infringing products by an air freshener consumer. SMF ¶¶ 102-103.

[13] Plaintiffs themselves claim they are well known for their "world famous air fresheners sold under the LITTLE TREES brand." ECF 13, ¶ 15. Energizer's REFRESH YOUR CAR! brand also is well known in the market place. SMF ¶ 2-3.

3) <u>The marks have starkly different typefaces and styles</u>, including (a) Energizer's dual scent names were in a consistent font in a small typeface (much smaller than Refresh Your Car!); (b) "Black Ice" is depicted consistently in large letters as "BLACK iCE," with the mark in all caps except for the letter "i"; (c) the "BLACK iCE" logo depicts those words inside of a stylized piece of ice (and larger than Little Trees). On Plaintiffs' paper product, "Black Ice" also appears at the base of Plaintiffs' tree-shaped product. "Boardwalk Breeze" always was used in a distinctive script, while "Bayside Breeze" appeared in standard letters.

4) <u>The packages are different in myriad ways</u>, including Energizer's (a) vent stick package is rounded at the top and the diffuser package rounded at the top and bottom; (b) vent sticks and diffuser products are visible through the packaging; and (c) dual-scent packaging has a car design with bright headlights and lightning in the background. In contrast, Plaintiffs' (a) paper product shows a hanging tree; (b) vent wrap product does not show through; and (c) "Fresh Link" looks very different than any other product. Boardwalk Breeze had a large palm tree and additional greenery on the left side, a broad expanse of visible sand at the bottom, and a two-color sailboat; Bayside Breeze uses a multi-color boat with a pier/dock at the bottom.

5) <u>The colors and imagery on the packages are very different</u> with Plaintiffs' products having the prominent yellow packaging, the Tree Design Mark, and a red banner (with the Little Trees name). Energizer's dual-scent packaging used black, blue, white, and grey coloring; Plaintiffs use yellow, green, red, white, and black (with "ice crystals" on the vent wrap and fresh link products). The Boardwalk Breeze and Bayside Breeze packages also had identifiable differences in color and imagery.

6) <u>The products are different</u> with Plaintiffs' both being single scent products (a) sold mostly as paper trees; and (b) with non-paper product available in spray in a can, pump, a "link"

10

product, or a "vent wrap." Energizer's products (a) did not appear in paper; (b) had a "gel can," not sprays, for the dual-scent product; (c) had diffusers and mini diffusers; and (d) used an "auto vent stick" instead of a vent wrap. (In fact, Boardwalk Breeze *only* was sold as a vent stick.)



*All* of the distinctions present in *Nabisco* are present here. And in this case, ***both parties'*** "prominent use of [their] well-known house brand … significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused …." *Nabisco*, 220 F.3d at 46; *accord Playtex Prods.*, 390 F.3d at 164; *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993) ("Parents Magazine" and "Parent's Digest" not likely to be confused because of differences in logo typeface, the size of the marks and the presence of the house mark "legend"); *New Sensor*, 303 F. Supp. 2d at 313 ("When a product's brand name is prominently featured, the likelihood of confusion based on a subsidiary mark is unlikely."); *Legends Are Forever*, 58 F. Supp. 3d at 210 (no likely confusion based on house marks and other differences).

In addition to all of the above differences, when viewed as they appear on the shelves, "[t]he cumulative effect of the differences between the parties' products and in the commercial presentation of their marks creates distinct marketplace impressions." *Nabisco,* 220 F.3d at 47; *accord Playtex*, 390 F.3d at 164 ("differences in the way the products are packaged and

11

presented to consumers"); *LVL XIII Brands*, 209 F. Supp. 3d at 669 ("*Polaroid* requires the Court to consider the similarity of the marks *in context*.") (emphasis added). In retail stores, the parties' products are blocked—by brand, or type of product and then brand—so that products are surrounded by other products from the same company and the distinctions are clear. SMF ¶ 105.



Plaintiffs strenuously contended in other litigation that consumers immediately and easily recognize their products by the "sea of yellow" packaging. SMF ¶ 34. That sea of yellow—markedly different than Energizer's products—condemns Plaintiffs here.

### 2.  Plaintiffs' Marks Are Weak

In the Second Circuit, the strength of a mark depends not only on whether it is inherently distinctive (*i.e.*, conceptual strength), but also its level of recognition in the marketplace (*i.e.*, commercial strength). *See, e.g.*, *Playtex Prods.*, 390 F.3d at 163. Here, Plaintiffs' marks are relatively weak because they exist in a "crowded field." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* ("McCarthy") § 11:85 (5th ed. 2018).

> The ultimate test of relative strength is the distinctiveness of a mark in the perception and mind of the relevant customer group. A mark that is hemmed in on all sides by similar marks on similar goods or services cannot be very "distinctive." It is merely one of a crowd of similar marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.

*Id*. Over one hundred uses and/or registrations of scent names or brand names for air fresheners contain the words "black," "ice," and/or "breeze,"[14] which makes them exceedingly weak.[15] SMF ¶¶ 53-57. *See Streetwise Maps, Inc. v. VanDam, Inc*., 159 F.3d 739, 744 (2d Cir. 1998) ("[T]hird-party use of the words 'street' and 'wise' weakens the strength of Streetwise's mark."); *Lang*, 949 F.2d at 581 ("[E]xtensive third party use … weighs against a finding that [the mark] is strong"); *LVL XIII Brands*, 209 F. Supp. 3d at 668 ("extent of third-party use" is "particularly relevant to this inquiry"); *Nabisco v. Warner-Lambert Co*., 32 F. Supp. 2d 690, 698-99 (S.D.N.Y. 1999) (Based on only thirty-six uses or registrations, "the court finds that extensive third party use and/or registration of the term 'Ice' … considerably weakens the strength of the 'Ice Breakers' mark."), *aff'd*, 220 F.3d 43 (2d Cir. 2000).

### 3.    Plaintiffs Have No Evidence of Actual Confusion

Despite over ███████████ of sales of the allegedly infringing products (SMF ¶ 106), Plaintiffs offer **no evidence of actual confusion**.[16] The Court therefore should infer that confusion is not likely. *See, e.g., McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1136 (2d Cir. 1979); *accord Malletier*, 561 F. Supp. 2d at 386 (absence of actual confusion is "a powerful indicator" of the absence of "meaningful likelihood of confusion"). **Plaintiffs also offer no survey evidence** (SMF ¶ 108)—a failure that "strongly suggests that a likelihood of confusion cannot be shown." *E.S. Originals Inc. v. Stride Rite Corp.*, 656 F. Supp. 484, 490

---

[14] Boardwalk Breeze and Bayside Breeze share a "coastal theme," but that too commonly is used in the air freshener industry. SMF ¶ 104.

[15] The parties also have a number of other products with scent names including "black," "ice," or "breeze." SMF ¶¶ 27-30, 37-52.

[16] Plaintiffs' single, anonymous inquiry on Amazon ("Is the can of Midnight Black Ice the same as the spray, and the hanging trees?") is entirely irrelevant under clearly-established Second Circuit law. *See Nora Beverages*, 269 F.3d at 124 ("Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself.") (emphasis in original).

13

(S.D.N.Y. 1987); *accord LVL XIII Brands*, 209 F. Supp. 3d at 672; *Medici Classics*, 683 F. Supp. 2d at 312. "The absence of actual confusion evidence, or of survey evidence showing a likelihood of confusion, dictates that this factor be resolved in [defendant's] favor." *Malaco Leaf*, 287 F. Supp. 2d at 374.

Energizer, on the other hand, did commission confusion surveys (for each of the accused products) from Hal Poret, a renowned survey expert, that prove confusion is not likely. SMF ¶ 109. Those surveys, utilizing an accepted variant of the well-established "*Squirt*" format,[17] found net levels of confusion of 2% or less. SMF ¶ 110. These miniscule numbers demonstrate the absence of any likelihood of confusion.[18]

### 4. Energizer Did Not Act in Bad Faith

The Handstands employees who created the allegedly infringing products admittedly were aware of the existence and success of Plaintiffs' Black Ice and Bayside Breeze products. But the law in the Second Circuit is clear: "Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith." *Playtex*, 390 F.3d at 166; *accord N.Y. Stock Exch.*, 293 F.3d at 556 n.1 (same); *Malletier*, 561 F. Supp. 2d at 388. In fact, even assuming that Handstands knew about Plaintiffs' marks *and* intentionally copied certain pieces of those marks, the Court still is not required to infer bad faith. *Thoip*, 736 F. Supp. 2d at 713 ("While Disney

---

[17] Arguments about the survey's weight do not create a material fact issue. *See Rush Indus.*, 496 F. Supp. 2d at 227 ("The court reaches this conclusion [granting summary judgment] even if it were to accept each and every one of plaintiff's quarrels with the reliability of [the] survey.").

[18] *See Thoip*, 736 F. Supp. 2d at 712 ("low rate of confusion is strong evidence that there is no actual confusion"); *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 322–24 (S.D.N.Y. 2000) (referring to "levels of confusion" below 5% as "negligibly low" and 14.5% as "low considering"), *aff'd* 234 F.3d 1262 (2d Cir. 2000) ("only 14.5%"); 6 *McCarthy* § 32:189 (if net results "dip below 10%, they can become evidence which will indicate that confusion is not likely."); *see also Kind LLC v. Clif Bar & Co.*, No. 14 Civ. 770(KMW)(RLE), 2014 WL 2619817, at *9 (S.D.N.Y. June 12, 2014) ("confusion rates of 15% are on the lower end of rates that courts within this Circuit have found sufficient to show actual confusion").

almost undoubtedly intended to copy THOIP's shirts, other evidence indicates that Disney did not have the requisite intent to deceive. Thus, no inference to the contrary can be drawn."). Thus, bad faith entails more than mere copying, and instead, "refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Kind LLC*, 111 U.S.P.Q.2d at 1806; *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009) ("[T]he only relevant intent is intent to confuse. There is a considerable difference between an intent to copy and an intent to deceive."); *Streetwise*, 159 F.3d at 745. Indeed, "[t]he intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." *Kind LLC*, 2014 WL 2619817, at *11; *accord Malaco Leaf*, 287 F. Supp. 2d at 376 ("a party contemplating a new business idea would be remiss not to research its industry competitors' packages and designs").

Here, Handstands employees wanted to round out their "portfolio," and to create and offer Refresh Your Car! brand products to compete with Plaintiffs' Black Ice and Bayside Breeze products and other, similar products on the market. SMF ¶¶ 111-116.[19] In fact, the evidence shows Handstands wanted to *avoid* confusion. Handstands employees expressly stated they did not want to infringe Plaintiffs' trademarks. SMF ¶ 117-122. *See Streetwise*, 159 F.3d at 746 ("They did not believe this mark infringed on plaintiff's because of differences between the two marks."). Moreover, Handstands went to market using its own Refresh Your Car! brand and packaging. SMF ¶¶ 16, 22. These facts *negate* an inference of bad-faith intent. *See Kind LLC*, 111 U.S.P.Q.2d at 1806 ("The fact that the MOJO packaging prominently displays the MOJO

---

[19] Handstands, in conjunction with third-party fragrance houses, conducted and reviewed research regarding gaps in their fragrance portfolio, and to develop "masculine" and "light and airy" fragrances to compete with all of the products in those respective categories. SMF ¶ 112.

mark and also displays the Clif mark, and uses a trade dress dissimilar to KIND's 'minimalist' trade dress, negates an inference of intent to deceive consumers as to the source of the product."); *Nora Beverages,* 269 F.3d at 125 ("[B]y placing its labels prominently upon its bottles, PGA negated an inference of intent to deceive consumers as to the source of its product."). As soon as Energizer learned that Plaintiffs' believed the Midnight Black and Ice Storm dual-scented products and Boardwalk Breeze product were infringing, Energizer devised a plan to stop selling them. SMF ¶¶ 16, 22. The lack of bad faith is further supported by Energizer's long use of other scent names with the words "black," "ice," and "breeze" in them with no objection from Plaintiffs. SMF ¶¶ 27-30, 37-47. As a result, no inference of bad faith can be drawn from the evidence of record. And in any event, the overall impression of the parties' marks is so dissimilar as to require judgment "without considering all of the [] factors." *Playtex Prods.*, 390 F.3d at 166-67; *accord Nabisco*, 220 F.3d at 48.

### 5. The Proximity of the Products Indicates Confusion Is Not Likely

While the parties' products are sometimes (but not always) sold in the same stores and even in the same aisle, the *way* the parties' products are displayed in those stores dictates *against* a finding of likely confusion. It is undisputed that retailers block the parties' products by brand on retailer shelves. SMF ¶ 105. In other words, either for all purposes or within the different product forms, the Little Trees products are grouped together and the Refresh Your Car! brand products are grouped together. Along with prominent use of house marks and distinctive packaging, this grouping dispels confusion. *See, e.g., Kind LLC*, 111 U.S.P.Q.2d at 1806 (The products "all prominently bear the MOJO and Clif marks, thus dispelling confusion .... Also helping to dispel confusion is that many MOJO and Clif bars are sold through mass market and grocery stores, where MOJO bars are often grouped with other Clif Bar products and KIND bars are often grouped with other KIND products.").

16

### 6.      Purchasers Are Not Unsophisticated

The relevant focus of this factor is on purchasers and prospective purchasers of Plaintiffs' products. *See Savin Corp.*, 391 F.3d at 461. Unsurprisingly, given the differences in the commercial impression of the parties' products, "Plaintiff[s] [have] not presented any evidence to show that its customers are so unsophisticated that they would confuse one of Defendant[s'] [products] with one of Plaintiff[s']." *Legends Are Forever*, 58 F. Supp. 3d at 209. Indeed, record evidence shows the opposite, as Plaintiffs' own market research found consumers recognize Plaintiffs' products in seconds and distinguish them from all others on the shelves. SMF ¶ 34.

### 7.      The Final Two Confusion Factors Are Irrelevant

Plaintiffs have failed to provide any evidence that Energizer's products are inferior in any way to Plaintiffs' products. Thus, this factor is neutral. And "[b]ecause the parties in this case are already competitively proximate, there is no gap to bridge and so this factor is irrelevant." *Kind LLC*, 111 U.S.P.Q.2d at 1804.

In sum, six of the eight confusion factors mandate a finding that confusion is not likely, and the remaining two factors are neutral. Accordingly, Energizer is entitled to summary judgment on Plaintiffs' infringement and unfair competition claims.

### B.      Plaintiffs Cannot Prove Their Federal Dilution Claims

A federal trademark dilution claim has three elements: (1) plaintiff's ownership of a famous, distinctive mark; (2) the defendant's use of a mark … in commerce; and (3) a likelihood that the defendant's use will dilute plaintiff's mark through 'blurring' or 'tarnishment.'" *See* 15 U.S.C. § 1125(c)). Plaintiffs' dilution claims fail because they can show neither fame nor likely dilution through blurring, which is all that was plead. *Id. See also* 15 U.S.C. § 1125(c)(1).

### 1.      Plaintiffs Cannot Show Their Marks Are Famous

A truly "famous mark" is a threshold element for a federal dilution claim. Under the

Trademark Dilution Revision Act (TDRA), "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Proving fame is "a difficult and demanding requirement." 4 McCarthy § 24:104. Only "very well-known and strong marks need apply for the extraordinary scope of exclusivity given by" the TDRA. *Id.* As McCarthy observes:

> Without a requirement that the plaintiff's mark be very strong or famous, an antidilution statute becomes a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon. If every trademark could invoke the antidilution remedy and stop uses of all similar marks in every market and every line of trade, this would upset the traditional balance of fair versus free competition that inherent in trademark law. Such an expansion of the antidilution theory would grant every trademark a right "in gross," contrary to the most basic concepts of what legal rights of exclusion should exist in a trademark.

*Id.* Courts, including those in this Circuit, routinely hold that to qualify as "famous" under the TDRA, the mark must be a "household name"—akin to the nationally-renowned Buick, Kodak, Budweiser, and Coca-Cola brands. *Id.* (citing cases); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (COACH not famous).[20] "Niche fame," even if extensive among a subsection of the population, is insufficient. *See Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 759 (S.D.N.Y. 2012).

Indeed, Plaintiffs' *own 30(b)(6) witness*, who has worked for Plaintiffs for over 20 years, including as Vice President of Marketing, admitted that Black Ice and Bayside Breeze are not famous. SMF ¶ 23.



---

[20] Under 15 U.S.C. § 1125 (c)(2)(A), the following non-exclusive factors are relevant to fame: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; and (iv) Whether the mark was registered … on the principal register."



### a.   Empirical Evidence Shows Plaintiffs' Marks Are Not Famous

The only empirical evidence in the record confirms that consumers do not recognize *either* of Plaintiffs' marks at levels approaching those required of "famous" marks. Dr. David Neal conducted a survey determining that "neither Black Ice nor Bayside Breeze are famous as designations of source of air fresheners for automobiles among the general consuming public of the United States." SMF ¶ 124. Specifically, even after taking the conservative route of cueing respondents to the air freshener category,[21] Dr. Neal's survey demonstrates that consumer recognition is far below the threshold required for fame—only 37.2% for Black Ice and only 25.1% for Bayside Breeze. SMF ¶ 125. *See, e.g.*, 4 *McCarthy* § 24:106 ("[A] minimum threshold survey response [to prove fame] should be in the range of 75% of the general consuming public of the United States."); *T-Mobile US, Inc. v. Aio Wireless LLC*, 991 F. Supp. 2d 888, 931 (S.D. Tex. 2014) ("41.2% may not approach a sufficient showing to find fame").

### b.   Actual Recognition of Plaintiffs' Marks Is Non-Existent

Plaintiffs have provided no evidence—no surveys, no expert testimony, no consumer testimony, and no other relevant evidence like market research—of actual awareness of Plaintiffs' marks (standing alone and separate from other of Plaintiffs' indicia).[22] Moreover, any suggestion that Plaintiffs' marks are famous is further dispelled by the plethora of third-party

---

[21] *See Restatement (Third) of Unfair Competition*, § 25 comment e, 268-69 (1995) ("A mark that evokes an association with a specific source only when used in connection with the particular goods or services that it identifies is ordinarily not sufficiently distinctive to be protected against dilution.")

[22] ███████████████████████████ they have no recognition evidence that separates the scent names from the Little Trees name or the Tree Design Mark. SMF ¶¶ 108, 132-133.

marks for air fresheners incorporating BLACK, ICE, and BREEZE, and multitude of different goods sold under registered marks incorporating "Black Ice." SMF ¶¶ 58-59. "It is well settled in this Circuit that to establish that a mark is famous …, a plaintiff must show … a high degree of *acquired* distinctiveness," *S&L Vitamins*, 521 F. Supp. 2d. at 210 (emphasis in original) (internal citations and quotations omitted), and courts routinely find marks ineligible for dilution protection when extensive third-party uses exist. *See, e.g., Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 750 (S.D.N.Y. 1997); *accord Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 265 (5th Cir. 1980) ("Domino" weak based on third-party use); *Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 941 (E.D. Mich. 1997) (use of "authority" outside of relevant market precludes fame).

### c. There Is Insufficient Evidence Regarding the Duration, Extent, or Geographic Reach of Plaintiffs' Advertising

Plaintiffs produced little evidence regarding the "duration,[23] extent, [or] geographic reach"[24] of their advertising of these specific products,[25] much less evidence showing that advertising or promotional activities had an *actual impact* on consumer recognition of Plaintiffs' marks. SMF ¶¶ 129-130. Indeed, Plaintiffs offered no proof of any of their advertising expenditures and admittedly ███████████████████████. SMF ¶ 139.[26]

Plaintiffs also produced no relevant evidence of unsolicited media recognition of the scent names

---

[23] Bayside Breeze, sold only since 2013 (SMF ¶ 21), has been used for insufficient time to establish fame. *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 466-67 (S.D.N.Y. 2007); *Lane Capital Mgmt, Inc.. v. Lane Capital Mgmt., Inc.*, 15 F. Supp. 2d 389, 400 (S.D.N.Y. 1998).

[24] SMF ¶ 140.

[25] Plaintiffs produced a handful of ads showing the marks in this case (all of which feature Plaintiffs' LITTLE TREES logo, Tree Design Mark, and yellow packaging)—but the vast majority of them are directed toward distributors and retailers (not end users), or are examples of or ads for in-store displays with no evidence of their extent of distribution. SMF ¶¶ 134-135.

[26] ██████████████████████████████████████████████████████████ ut no evidence indicates the number of stores or how many consumers saw the displays. SMF ¶¶ 136-138.

(alone) by third parties. SMF ¶ 139.

Even if Plaintiffs had done some relevant advertising and promotion, their failure to produce any evidence of the *impact* of that advertising is fatal. *See TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001) ("Over the past decade, the affidavit asserts, TCPIP spent 'tens of millions of dollars' advertising its mark, but does not tell how many millions, when expended, or how effectively. Nor did TCPIP submit consumer surveys, press accounts, or other evidence of fame."); *S&L Vitamins,*, 521 F. Supp. 2d at 211.

### d.    Plaintiffs' Sales Are Insufficient to Support a Claim of Fame

Significant sales are insufficient to show the nationwide recognition required by the TDRA absent other indicators of fame.[27] Indeed, courts have rejected claims of fame based on sales numbers much higher than those Plaintiffs produced in this litigation. *See., e.g.*, *TCPIP Holding*, 244 F.3d at 99 (not famous despite sales of more than $380 million); *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 879 (9th Cir. 1999) (not famous despite seventy years of use, $3 billion annual sales, and over $5 million annual advertising costs). Again, Plaintiffs' sales and promotion are irrelevant because they were all made in connection with the Little Trees name and logo, the Tree Design Mark, and the yellow Little Trees packaging—so no *independent* evidence of the fame of the Black Ice and Bayside Breeze scent names exists.

### e.    Plaintiffs' Trademark Registrations Do Not Show Fame

"[R]egistration alone does not demonstrate fame." *House of Bryant Publ'ns, LLC v. City of Lake City, Tenn.*, 30 F. Supp. 3d 711, 715 (E.D. Tenn. 2014). "One cannot logically infer fame from the fact that a mark is one of the millions on the federal register." 4 *McCarthy* § 24:106. Courts have not hesitated to grant summary judgment against plaintiffs with registered marks

---

[27] Plaintiffs never provided information about their sales (or advertising) in different states or regions, and for that reason too it would be insufficient to prove *nationwide* fame.

where there was a similar dearth of other evidence of fame. *See, e.g., Legends are Forever*, 58 F. Supp. 3d at 210; *Scholastic, Inc. v. Speirs*, 28 F. Supp. 2d 862, 873-74 (S.D.N.Y. 1998).

### 2.    Plaintiffs Cannot Show a Likelihood of Dilution by Blurring

In adding to failing to clear the "famous mark" hurdle, Plaintiffs cannot show likely dilution by blurring, which the TDRA defines as "*association* arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B (emphasis added). While the TDRA identifies a list of non-exclusive factors a court can consider in determining whether there is a likelihood of dilution by blurring, the statute expressly states that "association" between the parties' respective marks is required and, as outlined above, Plaintiffs proffer no admissible evidence of association. SMF ¶¶ 141-144.

In contrast to Plaintiffs' lack of evidence of association—either actual or likely—a reliable scientific survey conducted by Dr. Neal documents ZERO *actual* association between the parties' respective scent names. Indeed, Dr. Neal's association survey shows that when consumers viewed Defendants' products, a "plurality of consumers" did not have any other brand come to mind—much less Black Ice or Bayside Breeze. SMF ¶ 126. Even "more critically," for the small number of consumers who viewed Defendants' products and had some brand come to mind besides Defendants' brands, only 0.6% of consumers associated Defendants' Boardwalk Breeze with Plaintiffs and 0% of consumers associated Defendants' Midnight Black and Ice Storm product with Plaintiffs. SMF ¶ 127. These figures fall far "below any reasonable threshold for establishing a likelihood of association or dilution." *Id.* at ¶¶ 127-128.

### C.    Plaintiffs' Claims for Dilution Under New York Law Fail as a Matter of Law

"New York law does not permit a dilution claim unless the marks are 'substantially' similar." *Starbucks*, 588 F.3d at 114 ("Charbucks" and "Starbucks" not substantially similar, particularly in light of other packaging elements); *accord Playtex*, 390 F.3d at 167. "[T]he

22

substantial similarity test *requires more* than the familiar test of similarity used in the traditional infringement context. Marks must at least be similar enough that a substantial segment of the target group of customers sees the two marks *as essentially the same*." *Akiro LLC v. H. of Cheatham, Inc.*, 946 F. Supp. 2d 324, 342 (S.D.N.Y. 2013) (emphasis added) (quoting *Mobileye, Inc. v. Picitup Corp.*, 928 F. Supp. 2d 759, 782 (S.D.N.Y. 2013)). Courts in the Second Circuit addressing marks much more alike than the marks in this case have found them not substantially similar for dilution purposes. *See, e.g.*, *Akiro LLC*, 946 F. Supp. 2d at 342 (holding that MISS JESSIE'S and AUNT JACKIE'S are not substantially similar). For the reasons addressed above in connection with confusion, Energizer's scent names—when viewed as they appear in the marketplace—are not similar, much less substantially similar, to Plaintiffs marks.[28]

> **D.      Energizer Is Not Liable for Direct Infringement**

Plaintiffs' claims are based entirely on purported confusion by end users, *i.e.*, consumers of the parties' products. SMF ¶¶ 145-146. Plaintiffs do not allege confusion by retailers or distributors. Even after Energizer stopped selling the allegedly infringing products (and made a name change), Plaintiffs never sued any of the retailers or distributors selling the discontinued products or demanded that sales stop. SMF ¶ 147. At all times, Energizer's sales were limited to retailers and distributors (SMF ¶ 148); Energizer's actions did not confuse end consumers. Energizer, at best, can be liable for contributory infringement—a claim Plaintiffs failed to plead, and it is too late to shift liability theories now. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc*., 496 F.3d 1231, 1245–47 (11th Cir. 2007) (affirming summary judgment when plaintiff "failed to properly plead a claim for contributory trademark infringement").

---

[28] Plaintiffs' New York state law dilution claim also fails because of the lack of association evidence discussed above. "[A] claim of blurring [under New York state law] must be supported by some 'mental association' between the parties' use of similar marks." *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgt. Co.,* 718 F. Supp. 2d 292, 315 (E.D.N.Y. 2010).

### E.    Plaintiffs Are Not Entitled to Injunctive Relief

"To obtain a permanent injunction, plaintiff must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits." *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 265 (E.D.N.Y. 2008). "The movant must also show the threat of a continuing violation in order to obtain injunctive relief." *Id.* Thus, "[a]bsent any threat of continuing infringement, plaintiff is not entitled to injunctive relief." *Id.* According to the Supreme Court, "[t]he purpose of an injunction is to prevent *future* violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added). Indeed, "[w]here the illegal conduct has ceased, the party seeking the injunction bears the burden of proving 'that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Primepoint. L.L.C. v. Primepay, Inc.*, 401 F. App'x 663 (3d Cir. 2010) (quoting *W.T. Grant*, 345 U.S. at 633).

Energizer stopped selling the allegedly infringing products over 17 months ago. SMF ¶ 24. Energizer has no intention of resuming their sales, and Plaintiffs offer no evidence indicating otherwise. SMF ¶¶ 8, 25-26, 149-152. In fact, Energizer is selling the dual-scent product under a new name without objection. SMF ¶¶ 27-28. Plaintiffs cannot show irreparable harm, and their claim for injunctive relief is moot. *See, e.g., United Pet Grp., Inc. v. Axon US, Corp.*, No. 13-cv-126 (WFK) (MDG), 2013 WL 5592617, at *5 (E.D.N.Y. Oct. 10, 2013) (denying injunctive relief when products no longer sold, and defendant swore it "will not do so in the future"); *Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 48 F. Supp. 2d 198, 213 (N.D.N.Y. 1999) (injunctive relief "moot in light of defendant's actions"); *Greilsheimer v. Ferber Chan & Essner*, No. 98 CIV. 2553 (LMM), 1998 WL 547092, at *2 (S.D.N.Y. Aug. 27, 1998) (denying injunction when defendants changed name; "it is illogical to assume that defendants would … change[] back").

F.      **Plaintiffs' Request for Treble Accounting of Profits Fails as a Matter of Law**

A trademark plaintiff can recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing *damages* the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as *actual damages*, not exceeding three times such amount." *Id*. (emphasis added). But Plaintiffs' lone remaining request for monetary relief is for an accounting for profits, not for damages (SMF ¶ 153); the Amended Complaint request for trebling, therefore, fails as a matter of law. *See Thompson v. Haynes*, 305 F.3d 1369, 1380 (Fed. Cir. 2002) ("As for profits, however, the court is not authorized to award up to three times the amount proved."); *BeautyBank, Inc. v. Harvey Prince LLP*, No. 10-Civ-955 (DAB) (GWG), 2011 WL 671749, at *5 (S.D.N.Y. Feb. 24, 2011) ("the statute does not permit trebling"); *U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*, No. 09-Civ-5517 (RMB) (AJP), 2009 WL 4351962, at *4 (S.D.N.Y. Dec. 1, 2009) ("courts cannot treble an award of defendant's profits").

III.    **CONCLUSION**

For the foregoing reasons, the Court should grant Energizer's Motion for Summary Judgment and dismiss Plaintiffs' claims in their entirety.

Dated: November 2, 2018

By: */s/ William H. Brewster*

William H. Brewster (BRN 520585)
Jennifer Fairbairn Deal (admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6500
Email:
bbrewster@kilpatricktownsend.com
jdeal@kilpatricktownsend.com

*Counsel for Defendants American Covers, LLC,*
*Energizer Holdings, Inc., & Energizer Brands, LLC*

25

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAR-FRESHNER CORPORATION, and JULIUS SAMANN LTD., | Civil Action No. 5:17-cv-171 (TJM/ATB) |
| Plaintiffs, | |
| v. | |
| AMERICAN COVERS, LLC F/K/A AMERICAN COVERS, INC. D/B/A HANDSTANDS, ENERGIZER HOLDINGS, INC., and ENERGIZER BRANDS, LLC, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I CERTIFY that on November 2, 2018, the foregoing was served on counsel for Plaintiffs via the Court's CM/ECF system.

*/s/ Jennifer Fairbairn Deal*
Jennifer Fairbairn Deal