**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CAR FRESHNER CORPORATION, and
JULIUS SAMANN LTD.,

                              Plaintiffs,

        v.                                                    5:17-cv-171
                                                              (TJM/ATB)

AMERICAN COVERS, LLC, f/k/a American Covers,
Inc., d/b/a Handstands, ENERGIZER HOLDINGS,
INC., and ENERGIZER BRANDS, LLC,

                              Defendants.

_____

**Thomas J. McAvoy, Sr. U.S.D.J.**


**DECISION & ORDER**

        Before the Court is Defendants' renewed motion for summary judgment, filed after

the United States Court of Appeals issued its mandate in this matter.  See dkt. # 138.

Also before the Court are the Plaintiffs' motion to preclude the expert report and testimony

of John G. Plumpe, dkt. # 137, and Defendants' motion to strike the Plaintiffs' jury trial

demand, dkt. # 139.  The parties have briefed the issues and the Court has determined to

decide the issues without oral argument.

**I.      BACKGROUND**

        This case arises from claims by Plaintiffs Car-Freshner Corporation and Julius

Samann, Ltd., ("Plaintiffs"), that Defendants American Covers, LLC, f/k/a American

Covers, Inc., d/b/a Handstands, Energizer Holdings, Inc. and Energizer Brands, LLC,

("Defendants") violated the Plaintiffs' rights in trademarked scent names for automotive air freshener products. The Plaintiffs' Complaint raised claims for violation of their intellectual property rights under Federal and State law.

After the parties engaged in discovery, the Court considered the Defendants' motion for summary judgment.  The Court granted that motion, finding that Defendants were entitled to summary judgment on Plaintiffs' federal trademark claims, as well as on Plaintiffs' state-law claims.  See dkt. # 127.  Plaintiffs appealed.  The Second Circuit Court of Appeals affirmed in part and reversed in part.  See dkt. # 133 (Mandate).  The Court remanded for further proceedings consistent with the Court's opinion.

Upon remand, the Defendants renewed their motion for summary judgment.  They also filed a motion to strike the Plaintiffs' jury demand.  Plaintiffs filed a motion to preclude expert testimony.  Those issues have now been briefed.  As the Court has already addressed a summary judgment motion in this case, the Court will presume the parties' familiarity with the facts underlying this case and address only those facts relevant to the matter presently before the Court.

## II.    LEGAL STANDARD

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

2

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## III.   ANALYSIS

The Court will first address the issues raised by Defendants' summary judgment motion, as resolving those issues could moot the other motions.

### A.   Defendants' Motion for Summary Judgment

After the Court received the Mandate of the Second Circuit Court of Appeals, Defendant filed the instant motion.  Defendants argued that Plaintiffs have not produced evidence of direct infringement, have not pled contributory infringement, and are not

3

entitled to either injunctive relief or treble damages. They contend that the failure to produce evidence of direct infringement is fatal to Plaintiffs' remaining trademark infringement and unfair competition claims, and that, even if those claims survive, no evidence supports an injunction or treble damages.  Plaintiffs respond that the law of the case precludes Defendants from offering these arguments.  Even if they could make such arguments, Plaintiffs contend that evidence exists to support them.

### i.    Law of the Case

Before the Court can address the merits of Defendants' position, the Court must first address the Plaintiffs' claim that previous decisions of this Court and the Court of Appeals precludes consideration of these arguments.  Plaintiffs claim that the law of the case doctrine prevents the Court from considering these arguments.

"The law of the case doctrine has two branches."  United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002).  One branch, the "more flexible" one, is "implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court."  Id.  Plaintiffs rely on the second of these "branches," the mandate rule, since there has been an intervening decision by an appellate court.  "The 'mandate rule' has existed since the 'earliest days' of the judiciary."  Satek Corp. v. Dev. Specialists, Inc. (In re Courdert Bros., LLP), 809 F.3d 94, 98 (2d Cir. 2015) (quoting Briggs v. Pa. R.R. Co., 334 U.S. 304, 306 (1948)).  The rule requires that the lower court "'follow the mandate issued by an appellate court.'"  Id. (quoting Coudert I. Puricelli v. Republic of Argentina, 797 F.3d 213, 218 (2d Cir. 2015)).  "The mandate rule '. . . forecloses relitigation of issues expressly or *impliedly* decided by the appellate court.'"  United States

4

v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (quoting United States v. Bell, 5 F.3d 64, 66 (4th

Cir. 1993) (emphasis added in original)).  In addition, "where an issue was ripe for review

at the time of an initial appeal but was nonetheless foregone, the mandate rule generally

prohibits the district court from reopening the issue on remand unless the mandate can

reasonably be understood as permitting it to do so."  Id.  When a court applies the

mandate rule and decides "whether an issue remains open for reconsideration on remand,

the trial court should look to both the specific dictates of the remand order as well as the

broader 'spirit of the mandate.'"  Id. (quoting United States v. Kikumura, 947 F.2d 72, 76

(3d Cir. 1991)).

The Second Circuit Court of Appeals issued an opinion on Plaintiffs' appeal on

November 19, 2020.  See Car-Freshner Corp. v. Am. Covers, LLC, 980 F.3d 314 (2d Cir.

2020).  The Court found that "the record developed by" Plaintiffs "sufficed to withstand"

Defendants' "motion for summary judgment with respect to" Plaintiffs' "mark 'Black Ice' but

not its mark 'Bayside Breeze.'  We therefore affirm in part, reverse in part, and remand."

Id. at 319.  In relating the facts, the Court found that:

> Energizer's products compete directly with CFC's products in the U.S. automotive
> air freshener market and at many of the same retailers.  CFC's products with the
> "Black Ice" and "Bayside Breeze" scents were sold alongside Energizer's dual scent
> products with the words "Midnight Black Ice Storm" on the packaging and its single
> scent "Boardwalk Breeze" products in the same stores across the United States,
> including Target, Walmart, Pep Boys, Dollar General, AutoZone, and various
> supermarkets.  Stores that carry both parties' products will often "block" the
> products by either brand or type of product; thus, each party's products will typically
> be surrounded by its own brand of product but might be next to other, similar
> products made by other companies.  Both parties' products cost less than $4.00.

Id. at 320.  The Court of Appeals summarized this Court's opinion, noting that the Court

had granted Defendants' summary judgment claim by ruling that Defendants:

had not presented sufficient evidence for a reasonable juror to conclude that Energizer's marks were similar enough to [Plaintiffs'] marks to create a likelihood of confusion as to source or sponsorship of the products.  The Court therefore rejected [Plaintiffs'] Lanham Act claim.  For similar reasons the Court rejected [Plaintiffs'] federal false designation of origin and unfair competition claims, and state dilution and unfair competition claims.  The Court rejected [Plaintiff's] federal dilution claim because its marks were not sufficiently famous.

Id. at 326.

The Court of Appeals then proceeded to "review *de novo*" this Court's "ruling on whether the plaintiff has shown a likelihood of confusion" about the "origin or sponsorship of" the material in question.  Id.  "In determining whether the requisite likelihood of confusion has been shown (or, more precisely, on review of the summary judgment ruling, whether a genuine issue exists as to such likelihood), we consider the eight factors identified by Judge Friendly in *Polaroid v. Polarad Electronics*, 287 F.2d 492, 495 (2d Cir. 1961)[.]" Id. at 326-27.  The Court of Appeals applied these factors to both marks and reached a different conclusion regarding the "Black Ice" mark than this Court had.  The Court found:

> (1) the "Black Ice" mark has considerable strength, which weighs in favor of [Plaintiffs]; (2) [Defendants'] mark is significantly similar to [Plaintiffs'] mark because it uses the same two nondescriptive words, in sequence or on adjacent lines, where the words, by forming a well known phrase, are readily read together, which also weighs in favor of [Plaintiffs]; (3) [Defendants'] products compete directly with [Plaintiffs'] products, which weighs in favor of [Plaintiffs]; (4) the competitive nature of the products indicates there is no gap to be bridged, which favors neither party; (5) [Plaintiffs] did not demonstrate consumer confusion, which may favor [Defendants]; (6) [Defendants'] bad faith, attributed to it from the undisputed evidence of employees of Handstands, the company it acquired, is substantial, which strongly favors [Plaintiffs]; (7) the products are similar in quality, which favors neither party; and (8) the modest sophistication of the relevant consumer group barely favors [Plaintiffs].  The balance of all the *Polaroid* factors favors [Plaintiffs] at least sufficiently to preclude summary judgment for Energizer as to infringement of the "Black Ice" mark.  Energizer has failed to establish as a matter of law that there is no likelihood of confusion between the "Black Ice" and "Midnight Black Ice Storm Marks."

6

Id. at 333-334.  The Court of Appeals affirmed the Court's decision dismissing Plaintiffs' trademark dilution claims, but reversed the Court's decision on Plaintiffs' state-law unfair competition claim with regard to the "Black Ice" mark for the same reasons as on the federal trademark claim.  Id. at 334.  In addition, because the Court found that the "Black Ice" and "Midnight Black Ice Storm" marks were highly similar, the Court reversed the Court's decision on the state-law dilution claim with respect to the "Black Ice" mark.  Id. at 335.[1]

Plaintiffs insist the mandate rule applies to the three grounds for summary judgment Defendants offer.  First, the court considers Plaintiffs' contention that Defendants have waived the issue of injunctive relief and treble damages by failing to raise that issue on appeal.  They insist that "Defendants had ample opportunity to raise these arguments before the Second Circuit as alternative grounds to affirm this Court's entry of summary judgment in whole or in part, just as they had raised them in their first summary judgment motion."  The Court disagrees.  The Court has clear authority to consider the question of the availability of injunctive relief and treble damages.  Neither this Court nor the Court of

---

[1]The Court of Appeals' conclusion was that:

we: (1) REVERSE the grant of summary judgment for Energizer on CFC's federal trademark infringement claim with respect to its "Black Ice" mark; (2) AFFIRM the grant of summary judgment for Energizer on CFC's federal trademark infringement claim with respect to the "Bayside Breeze" mark, (3) AFFIRM the grant of summary judgment for Energizer on CFC's federal trademark dilution claim with respect to both marks, (4) REVERSE the grant of summary judgment for Energizer on CFC's state law claims with respect to the "Black Ice" mark, and AFFIRM the grant of summary judgment for Energizer on CFC's state law claims with respect to the "Bayside Breeze" mark.  We REMAND the case to the District Court for further proceedings consistent with this opinion.

980 F.3d at 335.

Appeals had any reason to consider the availability of damages.  This Court decided that Plaintiffs could not prove any of their claims, and therefore had no need to consider the question of what relief Plaintiffs could obtain.  Defendants, who were the appellees in the Second Circuit, also had no reason to seek an opinion from the Court of Appeals on the issue.  After all, "[t]he role of the appellee is to defend the decision of the lower court.  This Court has not held that an appellee is required, upon pain of subsequent waiver, to raise every possible alternate ground upon which the lower court could have decided an issue." Brown v. City of New York, 862 F.3d 182, 188 (2d Cir. 2017)).  An appellee does not necessarily waive an issue on remand by failing to raise that issue in the Court of Appeals. Id.  Defendants had no need to raise the issue of relief to defend this Court's decision on appeal, and they are not precluded from raising that issue–which they raised in their initial motion for summary judgment–now.  The mandate rule does not apply to those issues.

Whether Defendants may seek summary judgment on the issue of direct infringement is a different question.  Neither side disputes whether Defendants raised that issue in their initial motion, so the question here is whether the Court of Appeals, in reversing this Court's judgment on the infringement and unfair competition claims with respect to the "Black Ice" mark, "expressly or *impliedly* decided" that issue in its mandate. Ben Zvi, 242 F.3d at 95.

On appeal, Defendants argued that Energizer could not be liable for direct infringement.  See Defendants' Appellate Brief, Exh. A to Plaintiffs' Response, dkt. # 148-2, at 50.  Defendants argued that "Plaintiffs do not allege confusion by retailers or distributors, but Energizer's sales were limited to retailers or distributors.  Even after

8

Energizer stopped selling the products, Plaintiffs never sued any retailer or distributer or demanded that sale stop." Id. at 50-51. Moreover, they claimed, "[a]n allegation of direct infringement would have to be based on confusion by retailers and distributors, which is not argued, pled, or plausible, and it is too late to shift liability theories now." Id. at 51. Defendants' argument on this motion is nearly identical. See Defendants' Brief, dkt. # 138-1, at 7-8.

The Court finds that, while the Court of Appeals did not expressly reject Defendants' argument concerning direct infringement, the Court rejected that argument by implication. This Court did not address that argument in its earlier decision. Addressing that argument was not necessary, since the Court found no evidence a jury could use to find trademark infringement and whether Defendant was directly liable was immaterial. That argument was not immaterial to the Court of Appeals however, since that Court found that evidence existed to support claims related to the "Black Ice" mark. That argument would be material once the Court found evidence of infringement using the Polaroid factors. Since the Court ordered remand on one claim the Court impliedly rejected the argument that Defendant offered on appeal. The Court must find that the mandate rule forecloses consideration of this argument.

### ii.    Summary Judgment on Relief Available

As such, the Court has found that the mandate rule bars relitigation of the issue of whether evidence exists to conclude that Defendants are direct infringers. The Court will therefore consider only whether Plaintiffs can obtain injunctive relief or treble damages. The Court will address each issue in turn.

9

### a.    Injunctive Relief

Defendants contend that Plaintiffs are not entitled to permanent injunctive relief in this matter.  Defendants stopped selling the products that allegedly infringed on the trademark nearly four years ago, and has no intention of returning them to the market.  No evidence of contrary plans exists.  Defendants now sell similar products under different names, has invested money in those new products, and has sold them for far longer than Defendants sold the allegedly infringing ones.  Defendants offer sworn testimony that they do not intend to return those products to the marked.  Since no threat that the allegedly infringing conduct will continue exists, Defendants assert, no injunctive relief is available.  Plaintiffs respond that a possibility that Defendants will resume their allegedly infringing conduct remains, and that Courts under such circumstances have issued permanent injunctions.

The Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable" for violations of that law.  15 U.S.C. § 1116(a).  "Such an injunction is 'the usual and standard remedy once trademark infringement has been found.'" Fresh Del Monte Produce Inc. v. Del Monte Foods Co., 933 F.Supp.2d 655, 660 (S.D.N.Y. 2013) (quoting 5 MCCARTHY ON TRADEMARKS § 30:1).  A 2020 Amendment to the statute provides in relevant part that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]"   15 U.S.C. § 1116(a).  A rule of construction added to the statute provides that "'[t]he amendment made by subsection (a) [amending this section] shall not be construed to mean that a plaintiff seeking an injunction was not

entitled to a presumption of irreparable harm before the date of enactment of this Act [enacted Dec. 27, 2020]."  Act Dec. 27, 2020, P.L. 116-260, Div Q, Title II, Subtitle B, § 226(b), 134 Stat. 2208.

Here, Defendants argue that an injunction is unavailable because there is no likelihood of a future trademark violation.  Defendants no longer produce the products in question and have no intention of resuming production.

Defendants have provided a statement of material facts that addresses this issue. They contend that "[s]ince June 2017, Energizer has not sold products with the dual scents Midnight Black and Ice Storm[.]" Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 171-1, at ¶ 9.  Plaintiffs respond by pointing to evidence that indicates that Defendants continued to deliver such products to AutoZone stores in the United States after June 30, 2017, "purportedly for distribution to Mexico."  Plaintiffs' Response to Defendants' Statement of Material Facts ("Plaintiffs' Response"), dkt. # 148-1, at ¶ 9.  They also contend that evidence indicates that Defendants' records of sales of the allegedly infringing product may not be accurate, "logging" some sales of the offending products under a different name.  Id.  In addition, they contend that "Defendants have merely 'quarantined' their inventory of the infringing products."  Id.  The parties agree that Defendants have invested "time and money on changing the product packaging and updating . . . sales systems."  Defendants' Statement at ¶ 10.

Defendants provide a declaration from Michelle M. Atkinson, their "Chief Growth Officer."  See Declaration of Michelle M. Atkinson, dkt. # 183, at ¶ 1.  She relates that Defendants "invested time and money in making the change from Midnight Black and Ice Storm to Lighting Bolt and Ice Storm[.]"  Id. at ¶ 2.  Atkinson submitted a declaration in

11

2018 that had informed the Court that Defendants had no intention of selling the product again.  Id.  She relates the Defendants continue to sell Lightning Bolt and Ice Storm products, but none of the allegedly offending products.  Id. at ¶ 3.  She insists that Defendants have no plan and no need to reintroduce those names, since they have now sold the new products for far longer than the allegedly infringing products.  Id. at ¶ 3.

The Court finds that issues of fact exist which prevent summary judgment on whether Plaintiffs may be entitled to injunctive relief if they prove infringement.  While the Court recognizes the economic logic of Defendants' position and the assurance with which Atkinson states that no plans exist to reintroduce the allegedly offending products, the Court notes that accepting Defendants' position would require the Court to accepting Atkinson's credibility.  Such a determination is not appropriate at this point in the litigation. The Court will therefore deny the motion in this respect as well.

### b.    Treble Damages

Defendants also seek summary judgment on Plaintiffs' demand for treble damages, contending that such a request fails as a matter of law.  Defendants allege that Plaintiffs do not seek actual damages, but only an accounting of profits, and therefore cannot recover treble damages.  While they acknowledge enhanced damages are available under the statute for lost profits, Defendants argue that Plaintiffs have not offered evidence which would permit such recovery.  Plaintiffs point out that the Court of Appeals concluded that evidence supported a claim that Defendants actually wilfully and in bad faith in their alleged infringement, which justifies leaving the issue of increased damages for trial.

Federal law provides that a plaintiff in a trademark action of this sort may "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the

12

action."  15 U.S.C. § 1117(a).  "In assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  Id.  Further, "[i]f the court shall find the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  Id.  Both types of increased damages "shall constitute compensation and not a penalty."  Id.  The Second Circuit Court of Appeals long ago noted that:

> It is apparent from the face of the statute that the court in formulating its award has as much discretion as to the defendant's profits as it has over the plaintiff's damages.  The only difference is that the statute places no precisely stated ceiling over the amount of the defendant's profits which may be included in the award. Especially in view of the deliberate and fraudulent nature of the infringement, we could not find it an abuse of discretion if the judge had trebled the defendant's profits measured by the plaintiff's minimum license fee which the defendant by its infringement had "saved."

Deering, Milliken & Co. v. Gilbert, 269 F.2d 191, 194 (2d Cir. 1959).  Though this section does not authorize punitive damages, a court can address "deterrence of willful infringement" through the Court's power "to enhance a monetary recovery of damages or profits."  Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113 (2d Cir. 1988).  Under this section, "the question of what sum the district court finds to be 'just, according to the circumstances of the case,'" is a case-specific inquiry.  Merck Eprova AG v. Gnosis S.p.A., 760 F.F3d 247, 263 (2d Cir. 2014) (quoting 15 U.S.C. § 1117(a)).

The Court will deny the motion in this respect as well.  While the Court makes no finding about whether the Court will use the available discretion to determine whether to increase the award for lost profits to reflect the need for deterrence, the Court also

recognizes that evidence exists for bad faith and willful infringement.  The Court will not determine what award is available until a fact-finder determines liability.  At that point, the Court will address the question of the need and basis for additional damages.

### B.   Motion to Strike the Jury Demand

Defendants move to strike Plaintiffs demand for a jury trial.  They argue that Plaintiffs declared after the litigation was well underway that they do not seek damages, but only injunctive relief, attorneys fees, costs, and profits.  Because Plaintiffs seek only these types of relief, Defendants claim, they are not entitled to a jury trial.  Plaintiffs respond that, because evidence supports a finding that Defendants acted willfully and in bad faith in infringing, their claim for profits is based on deterrence, and a jury trial is appropriate under those circumstances.

The Seventh Amendment to the United States Constitution preserves the right to a jury trial in civil actions.  UNITED STATES CONST. AMEND. VII.  This provision means in part that "the right to trial by jury of legal claims must be preserved."  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 471-472 (1962).  A claim that "requests a money judgment . . . presents a claim which is unquestionably legal."  Id. at 476.  A claim for "damages based upon a charge of trademark infringement" is a claim "subject to cognizance by a court of law" and thus one entitled to trial by jury.  Id. at 477.  Plaintiffs have disclaimed any request for money damages as a result of Defendants' alleged trademark infringement. The question here is whether any of the Plaintiffs' remaining requests for relief represent the sort of relief that would invoke a right to a jury.

Plaintiffs point to their request for profits, arguing that their aim is deterrence, and that courts in this district have concluded that such a claim for relief invokes the jury trial

right.  They point out that courts have concluded that three situations where profits are

recoverable: "(1) where the defendant has been unjustly enriched; (2) the plaintiff has

sustained damages from the infringement; or (3) such an award is necessary to deter a

willful infringer from doing so again."  Plaintiff's Brief in Opposition to Defendants' Motion

to Strike the Jury Demand, dkt. # 146, at 2 (quoting Daisy Group, Ltd. v. Newport News,

Inc., 999 F.Supp. 548, 552 (S.D.N.Y. 1998)). Plaintiff cites to courts that have found that a

demand for profits as part of a request for deterrence creates a jury trial right in a

trademark case.  See, e.g., Gucci America, Inc. v. Accents, 994 F.Supp. 538, 541

(S.D.N.Y. 1998) (permitting a jury empaneled to assess damages to determine willfulness

and thus the amount of profits).  Defendants also point to a tradition in trademark cases of

jury trials and a general presumption in favor of jury trials in federal courts.

        In Gucci Am. v. Bank of China, the Second Circuit Court of Appeals concluded that,

in a trademark action an "'infringer is required in *equity to account* for and yield up his

gains to the true owner,' and 'profits are then allowed as an *equitable* measure of

compensation.'" Gucci, 768 F.3d 122, 131 (2d Cir. 2014) (quoting Hamilton-Brown Shoe

Co. v. Wolf Bros. & Co., 240 U.S. 251, 259 (1916) (emphasis in original)).   The Court is

unconvinced by Plaintiffs' arguments that deterrence as the purpose of the request for

profits transforms the nature of that remedy to a legal rather than equitable one.   While

the Court of Appeals has defined different purposes for an accounting, that Court has not

yet determined that those different purposes create some legal and some equitable

remedies. The Court finds no convincing argument that deterrence creates a legal remedy

rather than equitable one; the Court of Appeals has included all three purposes for

returning profits in a single category the Court noted as an equitable one.  The Court

agrees with courts in this Circuit that have concluded that a demand for profits in a trademark case is an equitable remedy that does not create a jury-trial right.  See e.g., Emmpresa v. Culbro Corp., 123 F.Supp.2d 203, (S.D.N.Y. 2000); Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd., No. 3:13cv297, 2021 U.S. Dist. LEXIS 18383 at *32 (D. Conn. Feb. 1, 2021) ("there is no right to a jury trial for an accounting and disgorgement of profits in a trademark infringement case").  The Court notes as well that, as explained above, the Court has the discretion to increase the amount of profit determined by an accounting to reflect willful infringement and bad faith.

The Court will therefore grant the Defendants' motion in this respect and strike the Plaintiffs' jury demand.

### C.   Plaintiffs' Motion

Having addressed whether summary judgment should be entered in this case, the Court will now address the parties' other motions, beginning with Plaintiffs' motion to preclude the expert report and testimony of John G. Plumpe, who proposes to testify on Defendants' profits on sales of the allegedly infringing goods.

This motion concerns the admissibility of expert testimony.  Federal Rule of Evidence 702 "governs the admissibility of expert testimony."  Showers v. Pfizer, Inc., 819 F.3d 642, 658 (2d Cir. 2016).  That Rule permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education" to "testify in the form of an opinion" under certain conditions.  FED. R. EVID. 702.  To be qualified to testify, the "expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702(a).  In addition, "the testimony" must be "based on sufficient facts and date" and be "the product

of reliable principles and methods." FED. R. EVID. 702(b)-(c).  Finally, the expert must have

"reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702(d).

"The proponent of the testimony has the burden to establish these admissibility

requirements."  Showers, 819 F.3d at 642.

A district court has "broad discretion" in evaluating expert testimony.   McCullock v.

H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995).  In carrying out its role as gatekeeper,

a court must take a "flexible" approach that focuses on "the scientific validity–and thus the

evidentiary relevance and reliability–of the principles that underlie a proposed submission."

Daubert v. Merrell Dow Pharms., 509 U.S. 579, 594-95 (1993).  The court is to

concentrate only on "principles and methodology," and "not on the conclusions that they

generate."  Id. at 595.  Of course, "the types of factors to consider" in evaluating expert

testimony "will 'depend upon the particular circumstances of the particular case at issue[.]"

Showers, 819 F.3d at 658 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150

(1999)).  The trial court's role is as "'gatekeeper," making sure "that the 'expert's testimony

both rests on a reliable foundation and is relevant to the task at hand.'" Id. (quoting United

States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007)).  "It is a well-accepted principle that

Rule 702 embodies a liberal standard of admissibility for expert opinions[.]"  Nimely v. City

of New York, 414 F.3d 381, 395 (2d Cir. 2005).  In determining whether the expert has the

qualifications to testify, the court's role, "whether a witness's area of expertise was

technical, scientific, or more generally 'experienced-based," is to "'[make] certain that the

expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice

of an expert in the relevant field."  Id. at 396.

17

Once a court determines that an expert is qualified to testify, "Rule 702 imposes on the trial judge an obligation to determine whether the expert's specialized knowledge will assist the trier of fact, i.e., will be not only relevant, but reliable." United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015). "Expert testimony should be excluded where it is 'speculative or conjectural,' but arguments that the expert's assumptions 'are unfounded go to the weight, not the admissibility, of expert testimony.'" Robinson v. Suffolk County Police Dep't, 544 Fed. Appx. 29, 32 (2d Cir. 2013) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)). In determining whether expert testimony will assist the trier of fact, a court must be careful to remember that such testimony may not either "'usurp the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it[.]'" Nimely, 414 F.3d at 397 (quoting United States v. Blizerian, 926 F.2d 1285, 1294 (2d Cir. 1991). The testimony should not attempt to "'tell the jury what result to reach'" or "'substitute the expert's judgment for the jury's.'" Id. (quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)).

Plumpe's report addresses the profits that Defendants earned from sales of the allegedly infringing products at issue in this case. The Court assumes the parties' familiarity with the contents of the report and will address the details only as necessary to explain the Court's decision.[2] As a general matter, the report uses data supplied by the Defendants to examine total sales of the offending products in the relevant period. Plumpe finds a "gross profit" and an "operating profit." The gross profit is the cost of

---

[2]The information has also been filed under seal to protect proprietary information and the Court is cautious in discussing details not necessary to explaining the opinion.

producing the goods subtracted from the value of the goods sold.   Plumpe then determines operating profits by subtracting various costs–including items like delivery, research and development, advertising, and discounts supplied to certain retailers–from the gross profit.  Plumpe's report then performs a calculation in an attempt to determine how much of the profits generated from sales resulted from the infringing activity in question (use of the name "Midnight Black/Ice Storm") and how much was the result of other factors.  He terms this calculation an "apportionment of profits."  This final number represents his conclusion as to the profits Defendants obtained from the sale of the allegedly infringing products.

Plaintiffs contend that this report and testimony related to the report are inadmissible on a variety of bases, which the Court will address in turn.

Plaintiffs first argue that Plumpe's testimony on costs should be excluded because that testimony is not based on reliable data and instead amounts to a simple recitation–and thus expert ratification–of Plaintiffs' version of the facts.  Plaintiffs argue that Plumpe bases his opinion on costs on unreliable records.  Rather than producing the records that established costs, Plaintiffs instead had Ryan Sedlak, Senior Director of Finance for Energizer, create documents to suit the litigation.  Sedlak could not explain during his deposition how the company arrived at these numbers.  This data, Plaintiffs complain, has not been substantiated, audited or verified, and has not been provided in sufficient detail to evaluate.  Plumpe did not seek to examine the underlying data upon which the reports he used from the Defendants were based, and thus had no reliable basis for his calculations.  Such vague and unsubstantiated numbers provided no basis for a report and makes Plumpe's report meaningless.

19

The Court will deny the motion in this respect.  Part of Plaintiffs' argument here is that Plumpe should not be permitted to testify on things like sales of individual products and costs incurred by shipping or discounts given to particular suppliers because he did not examine underlying invoices and calculate such expenses himself.  Instead, he relied on calculations provided by the Defendants.  "Under Fed. R. Evid. 702, an expert witness, unlike a lay witness, is 'permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'" Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (quoting Daubert, 509 U.S. at 592).  The Daubert principles apply to "'technical' and 'other specialized' knowledge."  Id. at 311 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)).  A district court should exclude proffered "'expert testimony based on speculative assumptions[.]'" Id. (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).  "An expert's opinions that are without factual basis and are based on speculation or conjecture are simply inappropriate."  Id.   The information upon which Plumpe based his calculations came from company records provided by the Defendants.  Defendants have explained that the nature of their record-keeping required that data about individual products be extracted from other records.  Plumpe made use of this information in crafting his expert opinion.  Plaintiffs can surely cross-examine Plumpe and other witnesses about whether the information he had was sufficient to create a convincing opinion, but the weight to give an expert witness's testimony is a question for the trier-of-fact, not a reason to exclude the testimony.  "[A]rguments that the expert's assumptions 'are unfounded go to the weight, not the admissibility, of expert testimony.'"  Robinson, 544 Fed. Appx. at 32.

Plaintiffs next argument is that "Plumpe merely parrots [Defendants'] alleged costs

without performing any verification or analysis." This lack of other analysis serves to verify Defendants' own calculations and means he did not render a real analysis of his own. The Court will deny the motion on this basis as well. First, Plaintiffs' arguments again take aim at the data underlying Plumpe's calculations. That argument goes to the weight of the report rather than the admissibility. Moreover, Plumpe's report does not simply represent the Defendants' calculations as his own, providing only an expert's imprimatur to the data. While the underlying information certainly represented some calculation by the Defendants, Plumpe's report analyzed that data and applied Plumpe's specialized training and experience to providing meaning for the underlying data. Plumpe took that information and used it to calculate profits. He analyzed the data, which is surely a task for an expert and not merely a repetition of Defendants' legal position.[3]

Plaintiffs next focus on Plumpe's apportionment analysis, which looks to assign a value to the profits accrued to Defendants because of their allegedly infringing activity. The number Plumpe provides is smaller than the number he calculates for gross or net profits, since he claims that his methodology separates out the increased profits gained because of alleged infringement from the profits that would have come from a non-infringing product. The data that Plumpe used to arrive at this calculation, Plaintiff insists, was not reliable. Sedlak could not explain how the Defendants arrived at certain of the numbers they supplied Plumpe, and Plumpe did nothing to confirm any of the data. Thus,

_____

[3]The Court is hardly surprised that Plumpe's report, created while in Defendants' employ and advanced by the Defendants, supports Defendants' litigation position. Plaintiffs' expert report offered in opposition to Plumpe's does the same. That report also relies on the data supplied by the Defendants to reach a conclusion far more favorable to Plaintiffs' litigation position.

"the two data sets on which Plumpe based his apportionment analysis" are "unreliable proof of" Defendants' "profits that Plumpe purports to compare."  His opinion is thus inadmissible.  The Court will deny the motion on this basis as well, since the argument goes to the weight a factfinder should apply to the evidence, not to admissibility of the opinion.  For the same reason, the Court rejects Plaintiffs' argument that the opinion is inadmissible because he equivocated at his deposition about the amount of excess profit from the allegedly infringing products, stating that he was not sure of the actual excess amount.  The Plaintiffs may make that argument about the weight to assign that evidence at trial.

Plaintiffs also argue that the method that Plumpe used to apportion profits is one not accepted by the relevant scientific community and thus not admissible as expert testimony.  The only courts to have accepted such testimony, Plaintiffs argue, did so in contexts unrelated to this case, such as the value to be assigned good will in professional practice.  As a general matter, "a plaintiff 'is not entitled to profits demonstrably not attributable to the unlawful use of his mark,' but . . . the burden of proving any deduction for sales not based on the infringing mark falls upon the infringer."  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 72 (2d Cir. 1998) (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206 (1942)).  Thus, the testimony that Plumpe offers on the amount of profits attributable to infringement is relevant to this matter.  Plaintiffs' position is that his method is not an accepted one.  Evidence before the Court, in the form of the depositions of both experts, as well as citations to accounting and litigation textbooks and handbooks, indicates that the type of analysis that Plumpe performed is an accepted form of expert analysis used to

determine excess earnings under these circumstances.  Whether Plumpe's analysis was convincing, properly performed, or based on unreliable data goes to the weight the factfinder should supply the opinion, not to admissibility.  The Court will deny the motion on this basis as well.

Finally, Plaintiffs contend that Plumpe should not be permitted to testify because he "has no professional experience in the selling, marketing, or production of automotive air fresheners" or any other kind of consumer packaged goods.  Despite this lack of knowledge, he offers opinions on factors that played a role in the sales and profits of the air fresheners in question.  He based these opinions on Defendants' statements, not his own knowledge.  As a general matter, Plumpe is not offered as an expert on marketing strategies or production methods for air fresheners or other consumer goods, and a lack of experience in these areas does nothing to undercut his expertise in financial matters and calculation of profits.  Plaintiffs do not challenge his expertise in that way.  To the extent that his apportionment analysis is based in part on Defendants' market position, Plumpe's report points to records and testimony from this matter, and not just information supplied him from the Defendants.  The Court finds that questions about Plumpe's understanding of the underlying industry go more to the weight that should be assigned his report rather than to his conclusions. The Court will deny the motion in this respect as well.[4]

## IV.    CONCLUSION

For the reasons stated above, the Plaintiffs' motion to preclude the expert testimony

---

[4]The Court is also guided by its conclusion that no jury trial right exists for this case, eliminating any concern about a jury being too influenced by a claim of expertise.

and report of John G. Plumpe, dkt. # 137, is hereby DENIED.  Defendants' motion for summary judgment, dkt. # 138, is hereby DENIED.  The Defendants' motion to strike the jury trial demand, dkt. # 139, is hereby GRANTED.

**IT IS SO ORDERED**

Dated:  September 30, 2021

Thomas J. McAvoy
Senior, U.S. District Judge